Clifton W. Albright (SBN 100020)
David Martin (SBN 189755)
David Song (SBN 323073)
**ALBRIGHT, YEE & SCHMIT, APC**
888 West 6th Street, 14th Floor
Los Angeles, California 90017
Tel: (213) 833-1700 / Fax: (213) 833-1710
Email: david.martin@ayslaw.com;
david.song@ayslaw.com

Attorneys for Defendants
**LAUGH FACTORY, INC. and JAMIE MASADA**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARITH ISKANDER, an individual, | Case No.: 2:19-cv-01076-MWF-JEM |
| Plaintiff, | (*Assigned to Hon. Michael W. Fitzgerald*) |
| v. | **ANSWER AND COUNTER-CLAIMS OF** |
| LAUGH FACTORY, INC., a California corporation; JAMIE MASADA, an individual; and DOES 1 through 50, inclusive, | **DEFENDANTS/COUNTER-CLAIMANTS LAUGH FACTORY, INC. AND JAMIE MASADA** |
| Defendants. | |
| LAUGH FACTORY, INC. and JAMIE MASADA, | |
| Counter-Claimants, | |
| v. | |
| HARITH ISKANDER, and DOES 1 through 10, | |
| Counter-Defendants. | |

Albright Yee
& Schmit APC

Defendants/Counter-Claimants Laugh Factory, Inc. ("Laugh Factory") and Jamie Masada ("Masada") (collectively, "Defendants") answer the Complaint and assert Affirmative Defenses and Counter-Claims as follows:

The Complaint contains an introductory paragraph which does not require a response. To the extent a response is required, Defendants deny any allegations contained therein.

## THE PARTIES

1. Defendants admit that Plaintiff/Counter-Defendant Harith Iskander ("Iskander") is an individual over the age of 18 and a resident of Malaysia. Defendants lack information to admit or deny the remainder of Paragraph 1, and therefore those allegations stand denied.

2. Admitted.

3. Admitted.

4. Defendants admit that Masada is the owner, manager, and an officer of Laugh Factory. The remainder of Paragraph 4 is denied.

5. Denied.

6. Denied.

7. Denied.

## THE CONTEST

8. The document attached as Exhibit A speaks for itself and is the best evidence of the matters set forth in the email. Defendants deny the remaining allegations of Paragraph 8.

9. The document attached as Exhibit B speaks for itself and is the best evidence of the matters set forth in the email. Defendants deny the remaining allegations of Paragraph 9.

10. The document attached as Exhibit C speaks for itself and is the best evidence of the matters set forth in the email. Defendants deny the remaining allegations of Paragraph 10.

Albright Yee
& Schmit APC

11.     Denied.

12.     The document attached as Exhibit D speaks for itself and is the best evidence of the matters set forth in the email.  Defendants deny the remaining allegations of Paragraph 12.

13.     The document attached as Exhibit E speaks for itself and is the best evidence of the matters set forth in the email.  Defendants deny the remaining allegations of Paragraph 13.

14.     The document attached as Exhibit F speaks for itself and is the best evidence of the matters set forth in the email.  Defendants deny the remaining allegations of Paragraph 14.

15.     Defendants admit that Iskander was not paid $100,000.00, but maintain that Iskander breached the agreement with Defendants, and relieved them of any obligations to Iskander, as alleged below.  Defendants deny the remaining allegations of Paragraph 15.

16.     The Official Rules and Regulations cited by Iskander speak for themselves and are the best evidence of the matters set forth in the document.  Defendants deny the remaining allegations of Paragraph 16.

17.     Denied.

## FIRST CAUSE OF ACTION

### (Promissory Fraud against Laugh Factory, Masada & Does 1-50)

18.     Defendants incorporate their responses to the foregoing paragraphs as if set forth fully herein.

19.     Defendants admit that there was a potential $100,000.00 prize for the winner of the contest, but denies that Iskander was entitled to that award.  Defendants deny that the allegations in Paragraph 19 set forth the full terms and conditions of the contest. Defendants deny the remaining allegations of Paragraph 19.

20.     Denied.

21.     Denied.

Albright Yee
& Schmit APC

22.   Denied.

23.   Denied.

24.   Denied.

25.   Denied.

26.   Denied.

27.   Denied.

## SECOND CAUSE OF ACTION

### (Intentional Misrepresentation against Laugh Factory, Masada & Does 1-50)

28.   Defendants incorporate their responses to the foregoing paragraphs as if set forth fully herein.

29.   Defendants admit that there was a potential $100,000.00 prize for the winner of the contest, but denies that Iskander was entitled to that award.  Defendants deny that the allegations in Paragraph 29 set forth the full terms and conditions of the contest. Defendants deny the remaining allegations of Paragraph 29.

30.   Denied.

31.   Defendants admit that Iskander was contractually obligated to fulfill certain terms and conditions of the parties' agreement, which he failed to perform.  Iskander's performance of his contractual obligations was a condition precedent to any obligation(s) on the part of Defendants.  Defendants deny the remaining allegations of Paragraph 31.

32.   Denied.

33.   Denied.

34.   Denied.

35.   Denied.

36.   Denied.

37.   Denied.

38.   Denied.

Albright Yee
& Schmit APC

**ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS**
**LAUGH FACTORY, INC. AND JAMIE MASADA**

1

2

3   **THIRD CAUSE OF ACTION**

4   **(Negligent Misrepresentation against Laugh Factory, Masada & Does 1-50)**

39.     Defendants incorporate their responses to the foregoing paragraphs as if set forth fully herein.

40.     Defendants admit that there was a potential $100,000.00 prize for the winner of the contest, but denies that Iskander was entitled to that award.  Defendants deny that the allegations in Paragraph 40 set forth the full terms and conditions of the contest. Defendants deny the remaining allegations of Paragraph 40.

41.     Denied.

42.     Defendants admit that Iskander was contractually obligated to fulfill certain terms and conditions of the parties' agreement, which he failed to perform.  Iskander's performance of his contractual obligations was a condition precedent to any obligation(s) on the part of Defendants.  Defendants deny the remaining allegations of Paragraph 42.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

**FOURTH CAUSE OF ACTION**

**(Breach of Contract against Laugh Factory & Does 1-50)**

48.     Defendant Laugh Factory incorporates its responses to the foregoing paragraphs as if set forth fully herein.

49.     Denied.

50.     Defendant Laugh Factory admits that Iskander submitted a video in connection with the contest.  Defendant denies the remaining allegations in Paragraph 50.

51.     Denied.

52.     Denied.

Albright Yee
& Schmit APC

**ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS
LAUGH FACTORY, INC. AND JAMIE MASADA**

53.     Denied.

54.     Denied.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing against Laugh Factory & Does 1-50)

55.     Defendant Laugh Factory incorporates its responses to the foregoing paragraphs as if set forth fully herein.

56.     Defendant Laugh Factory admits that the parties formed an agreement regarding the contest, and allege that Iskander breached that agreement, as set forth below.  Defendant denies the remaining allegations of Paragraph 56.

57.     Paragraph 57 contains a legal conclusion which does not require and admission or denial.  To the extent a response is required, Defendant denies that it breached any implied covenant.

58.     Denied.

59.     Denied.

60.     Denied.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief against all Defendants)

61.     Defendants incorporate their responses to the foregoing paragraphs as if set forth fully herein.

62.     Defendants deny that Iskander complied with the terms of the parties' agreement.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

Albright Yee
& Schmit APC

5
ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS
LAUGH FACTORY, INC. AND JAMIE MASADA

1

2

## SEVENTH CAUSE OF ACTION

### (Misleading Advertising as against all Defendants)

3      67.    Defendants incorporate their responses to the foregoing paragraphs as if set

4 forth fully herein.

5      68.    Defendants deny they breached any obligation to Iskander and deny that he

6 is entitled to any relief.

7      69.    Denied.

8      70.    Paragraph 70 contains legal conclusions which require no response.  To the

9 extent a response is required, Defendants deny the allegations of Paragraph 70.

10      71.    Denied.

11      72.    Denied.

12      73.    Denied.

13      74.    Denied.

14      75.    Paragraph 75 contains legal conclusions which require no response.  To the

15 extent a response is required, Defendants deny the allegations of Paragraph 75.

16      76.    Denied.

17      77.    Denied.

18      78.    Denied.

19

## SEVENTH CAUSE OF ACTION

20

### (Unfair Competition as against all Defendants)

21      79.    Defendants incorporate their responses to the foregoing paragraphs as if set

22 forth fully herein.

23      80.    Defendants deny they breached any obligation to Iskander and deny that he

24 is entitled to any relief.

25      81.    Paragraph 81 contains legal conclusions which require no response.  To the

26 extent a response is required, Defendants deny the allegations of Paragraph 81.

27      82.    Paragraph 82 contains legal conclusions which require no response.  To the

28 extent a response is required, Defendants deny the allegations of Paragraph 82.

83.   Denied.

84.   Paragraph 84 contains legal conclusions which require no response.  To the extent a response is required, Defendants deny the allegations of Paragraph 84.

85.   Denied.

86.   Denied.

87.   Denied.

88.   Denied.

89.   Denied.

The balance of Iskander's Complaint consists of a prayer for relief, to which no specific answer is required, and Defendants deny that Iskander is entitled to any relief requested in the prayer for relief.

## AFFIRMATIVE DEFENSES

Defendants demand a jury trial and allege the following Affirmative Defenses. Defendants reserve the right to amend their answer to assert any other defenses, separate or otherwise, that may become known or available during discovery in this case.

## FIRST AFFIRMATIVE DEFENSE

Iskander's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Iskander's claims and defenses are barred per the equitable doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Iskander lacks standing to assert the claims and defenses in his Complaint.

## FOURTH AFFIRMATIVE DEFENSE

Iskander, by reason of his prior acts, conduct, representations and omissions, has waived his right, if any, to obtain the relief sought in the Complaint.

## COUNTERCLAIM

Defendants and Counterclaimants Laugh Factory and Masada, by and through counsel, hereby counterclaim against Iskander and the Doe defendants (collectively, "Counterclaim Defendants") as follows:

## PARTIES

1.      Counterclaimant Masada is an individual over the age of eighteen and a resident of the State of California, County of Los Angeles.  Masada is an owner and officer of Laugh Factory.

2.      Counterclaimant Laugh Factory is a California Corporation and has its principal place of business in the County of Los Angeles.

3.      Counterclaim Defendant Iskander, upon information and belief, is an individual over the age of eighteen and a resident of Malaysia.

4.      Defendants are ignorant of the true names of Counterclaim Defendants Does 1-10, inclusive, and therefore sue them through fictitious names.  Defendants are informed and believe that each of the fictitiously named Counterclaim Defendants is responsible for the injuries suffered by Defendants, in whole or in part.  Defendants will amend these Counterclaims when the true identities of the Doe Counterclaim Defendants are discovered.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).  Iskander has subjected himself to the venue and jurisdiction of this Court by filing this action in Los Angeles, California.

## FACTS

A.      **Iskander's Misappropriation of Trade Secrets**

6.      Iskandar first came to the attention of Defendants on or about September 10, 2016 when Iskander contacted a Laugh Factory representative about the possibility of "bringing the Laugh Factory brand to Asia."  (Exhibit 1).  Iskander represented that he loved the Laugh Factory brand and wanted to know the history of the brand, how the

Albright Yee
& Schmit APC

name was created, and if it was copyrighted. He indicated that he thought the brand would do very well in Malaysia.

7.     Iskander in that initial contact also inquired about a contest being sponsored by Defendants, known as the Laugh Factory's Funniest Person in the World Competition (the "Competition").

8.     Iskander acknowledged that the Laugh Factory brand was well known around the world, including in Malaysia.  He represented that he had silent partners who could help bring the brand to Malaysia.

9.     Iskander again expressed his interest in bringing the Laugh Factory brand to Malaysia in an email to Masada dated September 21, 2016.  (Exhibit 2).  He repeated that expression of interest to another Laugh Factory representative the same day, and again approached Defendants regarding the Laugh Factory brand on October 6th, 2016. (Exhibits 3, 4).

10.     Iskander spoke openly about his desire to open a Laugh Factory in Malaysia in front of several contestants who were in the Competition.

11.     In or about December 2016, Iskander and Masada agreed to pursue discussions about opening a Laugh Factory in Malaysia.  Those discussions continued in January 2017.  (Exhibit 5).

12.     When Iskander indicated that he wished to come to the United States in January 2017, Masada instructed him to obtain a visa through an immigration attorney so as not to give the false impression that a partnership existed.  (Exhibit 6).

13.     Iskander then approached Masada with an offer to open three Laugh Factory clubs in Kula Lumpur, Singapore, and Jakarta.  (Exhibit 7).  Iskander's written communications made clear that there was no agreement allowing him to open a Laugh Factory or that he had any legal interest in the Laugh Factory brand.  (Exhibit 8).

14.     The parties ultimately came to an agreement in principle, which was never executed or formalized.  (Exhibit 9).  In reliance on this understanding, when Iskander came to the United States, he came to Defendants' offices and took copious, detailed

Albright Yee
& Schmit APC

**ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS
LAUGH FACTORY, INC. AND JAMIE MASADA**

notes, asking questions about the Laugh Factory and its operations.   For example, Iskander asked questions about the operations of the club, including "open mic" shows, and the origins and growth of the brand.  Masada disclosed to Iskander that he had originally wanted to call the club "Joke and Yolk", and that he had registered that name and gotten a license, but ultimately decided on the "Laugh Factory" name.

15.     Iskander falsely represented that he would not use any of Defendants' proprietary information.  Iskander knowingly, intentionally and maliciously violated this commitment, which was false at the time it was made.  Iskander intentionally misappropriated Defendants' intellectual property and trade secrets.

16.     As just one example of Iskander's misappropriation of Defendants' intellectual property, he subsequently opened a business and called it "Joke and Lok." Iskander is using Defendants' misappropriated proprietary trade secrets and other intellectual property in connection with his operations of a substantially-similar operation in Malaysia.

17.     Iskander also misappropriated Defendants' proprietary operations on Twitter and Instagram, and is using the same techniques in his operations in Malaysia.

**B.     Iskander's Breach of the Competition Agreement**

18.     In 2016, Defendants sponsored the Competition, which involved an international group of comedians vying to garner the most votes to win.

19.     Masada specifically told Iskander in writing that the winner of the Competition "**must** make ten scheduled trips to the United States" to perform. (Exhibit 10).  The Competition award of $100,000.00 was to be paid in 10 installments, and specifically conditioned on those 10 appearances.  (Exhibit 11).

20.     By entering the Competition, Iskander became contractually bound to honor these terms and conditions.

21.     Iskander breached the Competition agreement in numerous ways.  On information and belief, Iskander submitted or caused to be submitted false and fictitious on-line votes in order to win the Competition.

Albright Yee
& Schmit APC

**ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS
LAUGH FACTORY, INC. AND JAMIE MASADA**

1  22.    Iskander also breached the Competition agreement by failing to fulfill his

2  obligation to make 10 visits to the United States to perform.  (Exhibit 12).

3  ## COUNT I

4  **(Willful Trademark Infringement, 15 U.S.C. §§ 1114-1117; Lanham Act §32)**

5  **(Against all Counterclaim Defendants)**

6  23.    Defendants incorporate by reference the above-paragraphs as though fully

7  set forth herein.

8  24.    Defendants own the exclusive and incontestable trademark rights to the

9  Laugh Factory brand.

10  25.    Iskander and the other Counterclaim Defendants have used and continue to

11  use the Laugh Factory brand and other proprietary trade information in commerce and

12  without Defendants' consent.

13  26.    The Counterclaim Defendants' use of this proprietary information and other

14  acts of trademark infringement have been committed with the intent to and have caused

15  confusion, mistake or deception in violation of 15 U.S.C. § 1114.

16  27.    As a direct and proximate result of Counterclaim Defendants' unlawful

17  conduct, Defendants have and will continue to suffer substantial harm and injury to their

18  business, goodwill and reputation.  Unless enjoined, Counterclaim Defendants' conduct

19  will continue to cause Defendants immediate and irreparable injury.

20  28.    Counterclaim Defendants' acts of trademark infringement are willful,

21  intentional and committed with malice to harm Defendants' business.

22  29.    Counterclaim Defendants' infringement of Defendants' trademarks

23  constitutes an exception case with the meaning of 15 U.S.C. § 1117, and Defendants are

24  therefore entitled to recover enhanced damages and attorneys' fees.

25

26

27

28

Albright Yee
& Schmit APC

**ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS**
**LAUGH FACTORY, INC. AND JAMIE MASADA**

## COUNT II

### (Common Law Trademark Infringement)

### (Against all Counterclaim Defendants)

30.     Defendants incorporate by reference the above-paragraphs as though fully set forth herein.

31.     Counterclaim Defendants' unlawful acts as described herein violate Defendants' trademark rights under California common law.

32.     Counterclaim Defendants' acts of trademark infringement have been committed with the intent to and have caused confusion, mistake or deception.

33.     As a direct and proximate result of Counterclaim Defendants' unlawful conduct, Defendants have and will continue to suffer substantial harm and injury to their business, goodwill and reputation.  Unless enjoined, Counterclaim Defendants' conduct will continue to cause Defendants immediate and irreparable injury.

34.     Counterclaim Defendants' acts of trademark infringement are willful, intentional and committed with malice to harm Defendants' business.  Defendants therefore seek to recover enhanced damages and an award of attorneys' fees.

## COUNT III

### (Misappropriation of Trade Secrets pursuant to 18 U.S.C. §1836(b)

### (Against all Counterclaim Defendants)

35.     Defendants incorporate by reference the above-paragraphs as though fully set forth herein.

36.     Defendants' trade secrets derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

37.     Defendants' trade secrets are confidential and are the subject of Defendants' efforts that were reasonable under the circumstances to maintain their secrecy. Defendants are informed and believe that Counterclaim Defendants misappropriated such confidential trade secrets by disclosing them and/or using them.

Albright Yee
& Schmit APC

38.     Defendants are informed and believe that Counterclaim Defendants misappropriated the trade secrets while being aware that the trade secrets belong to Defendants and of Counterclaim Defendants' duties and obligations to Defendants to limit the disclosure and use of such trade secrets only for the benefit of Defendants, and that such disclosure was in violation of Iskander's agreements with and obligations to Defendants.

39.     Counterclaim Defendants' misappropriation has caused and continues to cause Defendants damages and irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Counterclaim Defendants from further use or disclosure of Defendants' trade secrets is necessary to provide Defendants with complete relief.

40.     Counterclaim Defendants' misappropriation is willful and malicious and thereby entitles Defendants to an award of exemplary damages.

## COUNT IV

### (Misappropriation of Trade Secrets pursuant to
### California Civil Code §3426, *et seq.*)
### (Against all Counterclaim Defendants)

41.     Defendants incorporate by reference the above-paragraphs as though fully set forth herein.

42.     Defendants' trade secrets derive independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

43.     Defendants' trade secrets are confidential and are the subject of Defendants' efforts that were reasonable under the circumstances to maintain their secrecy. Defendants are informed and believe that Counterclaim Defendants misappropriated such confidential trade secrets by disclosing them and/or using them.

44.     Defendants are informed and believe that Counterclaim Defendants misappropriated the trade secrets while being aware that the trade secrets belong to

Albright Yee
& Schmit APC

ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/COUNTER-CLAIMANTS
LAUGH FACTORY, INC. AND JAMIE MASADA

Defendants and of Counterclaim Defendants' duties and obligations to Defendants to limit the disclosure and use of such trade secrets only for the benefit of Defendants, and that such disclosure was in violation of Iskander's agreements with and obligations to Defendants.

45.     Counterclaim Defendants' misappropriation has caused and continues to cause Defendants damages and irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Counterclaim Defendants from further use or disclosure of Defendants' trade secrets is necessary to provide Defendants with complete relief.

46.     Counterclaim Defendants' misappropriation is willful and malicious and thereby entitles Business Solutions to an award of exemplary damages.

## COUNT V

### (Breach of Written Contract)

### (Against Iskander)

47.     Defendants incorporate by reference the above-paragraphs as though fully set forth herein.

48.     As set forth above, Defendants and Iskander entered into a contract concerning the Competition.  The terms and conditions of that agreement were memorialized in writing.

49.     Defendants duly performed all conditions, covenants, and promises required on its part to be performed pursuant to the agreement.

50.     Iskander breached his contractual obligations to Defendants under the agreement by, *inter alia,* failing to perform the required 10 shows following the Competition.

51.     As a direct and proximate result of Iskander's breach of the agreement, Defendants have incurred and continue to incur damages in an amount to be proven at trial.

## COUNT VI

### (Unfair Competition pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (Against all Counterclaim Defendants)

52.     Defendants incorporate by reference the above-paragraphs as though fully set forth herein.

53.     By committing the acts and practices alleged in this Counterclaim, Counterclaim Defendants have violated California's Unfair Competition Laws by engaging in unfair, deceptive, untrue or misleading acts. For example, Defendants misappropriated Defendants' trade secrets in violation of 18 U.S.C. §1836 and California Civil Code §3426.

54.     Defendants are informed and believe that Counterclaim Defendants' actions are and will continue to be willful and deliberate. As a direct and proximate result of such actions by Counterclaim Defendants, Defendants have incurred and continue to incur damages and irreparable injury, including, without limitation, the loss of sales and profits it would have earned but for Defendants' actions, and  interference with Defendants' relationships with customers and potential customers.

55.     Defendants are informed and believe that Counterclaim Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from their acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment and relief as follows:

A.     Judgment in Defendants' favor that:

    1.     Counterclaim Defendants wrongfully misappropriated or used Defendants' trade secrets;

    2.     Counterclaim Defendants wrongfully misappropriated or used Defendants' trademarks;

    3.     Counterclaim Defendants engaged in unfair competition;

    4.     Iskander breached his agreement with Defendants.

Albright Yee
& Schmit APC

B.     Temporary, preliminary and permanent injunctive relief enjoining
Defendants from:

        1.     Misappropriating and/or aiding and abetting in the misappropriation
of Defendants' trade secrets and/or trademarks;

        2.     Maintaining - and, correspondingly, requiring Counterclaim
Defendants to promptly deliver and turn over to Defendants - any and
all property of Defendants which is in Counterclaim Defendants'
possession, custody or control.

C.     Compensatory damages in an amount to be proven at trial, but at least $10
million.

D.     Disgorgement of profits.

E.     Constructive trust.

F.     Punitive and/or exemplary damages.

G.     Attorneys' fees.

H.     Interest and costs.

I.     Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

DATED:  February 19, 2019           **ALBRIGHT, YEE & SCHMIT, APC**

By:  _____ */s/ David Martin* _____
             David Martin

Attorneys for Defendants
**LAUGH FACTORY, INC. and
JAMIE MASADA**

Albright Yee
& Schmit APC

*Harith Iskander v. Laugh Factory, Inc., et al.*
LASC Case No. 18STCV08097

1

2

## ECF/PACER FILE AND SERVE

3        I, CONNIE R. WHITE, declare:

4        1.        I am over the age of 18 years and am not a party to the within action.  I am

5   employed by Albright Yee and Schmit, APC in the City of Los Angeles, State of

6   California.

7        2.        My business address is 888 West 6th Street, 14th Floor, Los Angeles, CA

8   90017.

9        3.        On February 19, 2019, I served a copy of the foregoing document, titled:

10

11   **ANSWER AND COUNTER-CLAIMS OF DEFENDANTS/**

12   **COUNTER-CLAIMANTS LAUGH FACTORY, INC. AND**

13   **JAMIE MASADA**

14

15   [ X ]  by filing and serving directly through ECF/Pacer at the USDC-Central

16   District of California website at:  https://cacd.uscourts.gov.

17        I declare under penalty of perjury under the laws of the State of California and the

18   United States of America that the foregoing is true and correct.

19        Executed on February 19, 2019 at Los Angeles, California.

20

21

22   By:                          _/s/ Connie White_

23                               Connie White

24

25

26

27

28

Albright Yee
& Schmit APC