1  Joseph K Johnson (SBN 263499)
2  **LAW OFFICE OF JOSEPH K JOHNSON, PC**
   27201 Puerta Real, Suite 300
3  Mission Viejo, California 92691
   Tel/Fax: (949) 284-0062
4  *jjohnson@josephkjohnson.com*
5
   Attorneys for Plaintiff and Counter-Defendant
6  HARITH ISKANDER
7
8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10
11  HARITH ISKANDER, an individual          ) Case No. CV 2:19-01076-MWF(JEMx)
                                             )
12                Plaintiff,                 )
                                             ) **NOTICE OF MOTION AND MOTION**
13        v.                                 ) **OF PLAINTIFF HARITH ISKANDER**
                                             ) **FOR SUMMARY JUDGMENT OR, IN**
14                                           ) **THE ALTERNATIVE, PARTIAL**
   LAUGH FACTORY, INC., a                    ) **SUMMARY JUDGMENT PURSUANT**
15  California corporation; JAMIE            ) **TO FED. R. CIV. P. 56;**
   MASADA an individual; and DOES 1         ) **MEMORANDUM OF POINTS AND**
16                                           ) **AUTHORITIES IN SUPPORT**
   through 50, inclusive,                    ) **THEREOF**
17                                           )
                  Defendants.                ) *[Filed Concurrently with Defendant's*
18                                           ) *Statement of Uncontroverted Facts and*
                                             ) *Conclusions of Law; Request for Judicial*
19                                           ) *Notice; [Proposed] Judgment; and*
                                             ) *Declarations of Harith Iskander, David H.*
20                                           ) *Culmer, and Joseph K. Johnson]*
                                             )
21                                           ) Hearing Date:      Nov. 4, 2019
                                             ) Time:              10:00 a.m.
22                                           ) Crtrm:             5A
                                             )
23                                           ) L.R. 7-3 Conf.:    Sept. 30, 2019
                                             ) Disc. Cut-Off:     Oct. 14, 2019
24                                           ) Pre-Trial Conf.:   Jan. 27, 2020
                                             ) Trial:             Feb. 18, 2020
25  AND RELATED COUNTERCLAIM.                )
26
27
28
                                        1
         **ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

**PLEASE TAKE NOTICE** that on November 4, 2019, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 5A of the United States District Court, Central District of California, located at 350 West First Street, Los Angeles, California 90012, the Honorable Michael W. Fitzgerald presiding, Plaintiff and Counter-Defendant Harith Iskander ("Iskander") will move this Court for an order of summary judgment, or in the alternative, partial summary judgment.

Iskander hereby moves under Fed. R. Civ. P. 56(a) of the Federal Rules of Civil Procedure for summary judgment, or in the alternative, partial summary judgment, as to all seven causes of action asserted by Defendants and Counter-Claimants Laugh Factory, Inc., and Jamie Masada ("Laugh Factory" and "Masada," respectively; collectively, "Defendants") in their Counterclaim, including: (1) Willful Trademark Infringement (15 U.S.C. §§ 1114-1117 (2018); Lanham Act § 32); (2) Common Law Trademark Infringement; (3) Misappropriation of Trade Secrets pursuant to 18 U.S.C. § 1836(b) (2018); (4) Misappropriation of Trade Secrets pursuant to Cal. Civ. Code § 3426 (Deering); (5) Breach of Contract; (6) Unfair Competition pursuant to Cal. Bus. & Prof. Code § 17200 (Deering); and (7) Intentional Interference with Prospective Economic Advantage.  (Countercls., Dkt. 10.)

This motion is made under on the ground that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law as to the following matters:

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1.     With respect to Defendants' first and second causes of action for federal and common law trademark infringement, the undisputed facts show that there has been no infringement because the trademarks at issue are not confusingly similar, that Iskander never used Defendants' trademarks, and that Defendants are not "senior" users entitled to trademark protection with respect to the alleged infringement.

2.     With respect to Defendants' third and fourth causes of action for federal and California trade secret misappropriation, the undisputed facts show that Defendants have no trade secrets because they failed to maintain the secrecy of their information and they have identified no information as trade secrets.  The undisputed facts also show that Iskander never misappropriated Defendants' alleged trade secrets.

3.     With respect to Defendants' fifth cause of action for breach of contract, the undisputed facts show that the nature of the relationship between the parties was a contest under California law, not a contract, and that the changes Defendants made to the contest were unlawful and excused any alleged performance of Iskander.

4.     With respect to Defendants' sixth cause of action for unfair competition under Cal. Bus. & Prof. Code § 17200 (Deering), the undisputed facts show that none of the alleged actions took place in California (or even the United States),

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

rendering § 17200 in applicable and that the action fails because it is based on the failed allegations of the preceding causes of action.

5.     With respect to Defendants' seventh cause of action for intentional interference with prospective economic advantage, the undisputed facts show that Iskander engaged in no wrongful conduct and that the action fails because it is based on the failed allegations of the preceding causes of action.

In the event that summary judgment is not granted, Iskander alternatively moves for partial summary judgment as to each of the asserted claims for the reasons asserted above.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed in support thereof, the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law, the Request for Judicial Notice, the Declarations of Harith Iskander and Joseph K. Johnson and supporting exhibits, the entire Court file in this action, as well as such oral and other evidence that may be introduced at the hearing.

This Motion follows the Local Fed. R. Civ. P. 7-3 conference of counsel that occurred on September 30, 2019.  (*See*, Declaration of David H. Culmer, ¶¶ 2-3.)

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1

DATED:  October 7, 2019          **LAW OFFICE OF JOSEPH K. JOHNSON, PC**

2

3

By:  _____/s/ Joseph K. Johnson_____

4

Joseph K. Johnson

5

*Attorneys for Plaintiff and Counter-Defendant*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# TABLE OF CONTENTS

**Page**

**I INTRODUCTION**…….....………………………………………1

**II STATEMENT OF FACTS**……………………………….. 3

  **A Procedural Posture**……………………………….3

  **B The Trademarks**………………………………….3

  **C The Alleged Trade Secrets**………………………4

  **D The Contest**……………………………………….5

**III ARGUMENT**………………………………………8

  **A Summary Judgment Standards**……………………8

  **B Undisputed Facts Establish Neither
that the Marks at Issue are Confusingly Similar
Nor that Iskander used Defendants'
Trademarks Under Federal Statute**……………………..9

    1 The "Joke Factory" Mark is Not
    Confusingly Similar to—and Not Infringing Upon—
    the "Laugh Factory" Mark Because the USPTO
    Registered Both……………………………………….10

    2 Iskander Has Not Infringed Upon Defendants'
    Unregistered and Abandoned "Joke and Yolk" Mark……………………..11

    3 Iskander Has Neither Used Nor Infringed on
    Any of Defendants' Marks ………………………………11

  **C Undisputed Facts Establish No Likelihood of
Confusion, No Senior User Status, and No Use
or Infringement of Their Mark Under Common Law**……………..13

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1 There Is No Likelihood of the "Joke Factory"
Mark Being Confused with the "Laugh Factory" Mark ............................13

    a) The USPTO Registered the "Joke Factory" Mark.......................14

    b) Defendants Have Adduced No Evidence that
    Iskander's Marks are Confusingly Similar to Theirs .......................14

2 Defendants Have No Evidence That They Are the
Senior User in the Geographic Area Where They Seek
to Enforce Their Marks ............................................................14

3 Iskander Has Neither Used Nor Infringed on Any
of Defendants' Marks ..............................................................16

**D Defendants Have Failed to Show
Either the Existence or the Misappropriation
of Their Trade Secrets Under Federal
or California Statutes** ............................................................16

    1   Defendants Have Not Established that They Have
    Any Trade Secrets ............................................................16

        a)  Defendants Have Not Identified Any of Their
        Information That is Valuable Because it is
        Known to Others ............................................................17

        b) Defendants Have Not Taken Reasonable
        Measures to Keep Their Information Secret............................18

    2 Defendants Have Not Established that Iskander
    Misappropriated Their Trade Secrets ............................................20

**E. Laugh Factory's Claim for Breach of Written Contract
Fails Because There is no Evidence that Laugh Factory's
Additional (Breached) Terms Identified in its Counter-claim
were Initially Disclosed Which is a Violation of
Bus. & Prof. Code § 17539, the Law Regulating
Contests in California** ............................................................22

vii

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1 It is Undisputed That The Contract Laugh Factory
Alleges That Iskander Breached Was In Fact a Contest
as Defined by Bus. & Prof. Code, § 17539.3(e) …………………………..22

2 It is Undisputed That The Laugh Factory's Contest
Violated Bus. & Prof. Code, § 17539.1(a) …………………………...……22

**F Undisputed Facts Show that All Acts Complained
of Occurred in Malaysia Rendering Inapplicable
the Unfair Competition Law
(Cal. Bus. & Prof. Code § 17200 (Deering)** ………………………...…26

**G Undisputed Facts Show There was No
Wrongful Conduct Giving Rise to Intentional
Interference with Prospective Economic Advantage** ……………….…27

**IV CONCLUSION** ……………………………………………………….28

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

1

# <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Cases**

4

5

Adickes v. S.H. Kress & Co. , 398 U.S. 144 (1970) ……………………….. 9

6

Am. Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622 (1989) ………………18

7

Bed, Bath & Beyond of La. Jolla, Inc. v.

8

La. Jolla Vill. Square Venture Partners , 52 Cal. App. 4th 867 (1997)………......28

9

Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,

10

174 F.3d 1036 (9th Cir. 1999) …………………………………….9, 10, 11, 12, 15

11

12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) …………………………….8, 9

13

Della Penna v. Toyota Motor Sales, U.S.A., 11 Cal. 4th 376 (1995) …………27

14

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,

15

16

109 F.3d 1394 (9th Cir. 1997) …………………………………………12, 14

17

Fontenberry v. MV Transp. Inc., 984 F. Supp. 2d 1062 (E.D. Cal. 2013)……….26

18

I-CA Enters., Inc. v. Palram Americas, Inc., 235 Cal. App. 4th 257 (2015) ……28

19

Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.,

20

No. CV 15-08762 RGK (GJSx), 2015 U.S. Dist. LEXIS 190231

21

 (C.D. Cal. Dec. 14, 2015) ……………………………………………………18

22

23

Nissan Fire & Marine Ins. Co. v. Fritz Cos. , 210 F.3d 1099 (9th Cir. 2000)……9

24

Optimal Pets, Inc. v. Nutri-Vet, L.L.C., 877 F. Supp. 2d 953

25

(C.D. Cal. 2012) ……………………………………………………….…14, 15

26

27

28

ix

Ruckelshaus v. Monsanto Co., 467 U.S. 986 (1984) …………………………17

San Jose Constr., Inc. v. S.B.C.C., Inc., 155 Cal. App. 4th 1528 (2007) ……...27

Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217 (9th Cir. 1996) …...10, 11

Settimo Assocs. v. Environ Sys., Inc., 14 Cal. App. 4th 842 (1993) …………..27

Sullivan v. Oracle Corp., 51 Cal. 4th 1191 (2011) ……………………………… 26

Toho Co. v. Sears, Roebuck & Co. , 645 F.2d 788 (9th Cir. 1981) …………......13

Turner v. City of Taylor, 412 F.3d 629 (6th Cir. 2005) …………………………9

Wood v. Apodaca, 375 F. Supp. 2d 942 (N.D. Cal. 2005) ………………………13

**Statutes**

15 U.S.C. § 1052 (2018) ………………………………………………….. 10

15 U.S.C. § 1053 (2018) ………………………………………………….. 10

15 U.S.C. § 1057 (2018) ………………………………………………….. 10

15 U.S.C. § 1114 (2018) ………………………………………………….. 9, 12

18 U.S.C. § 1836 (2018) ……………………………………………………16, 20

18 U.S.C. § 1839 (2018) ………………………………………………… 17, 21

Cal. Bus. & Prof. Code § 3426 (Deering) ………………………………………..16

Cal. Bus. & Prof. Code § 3426.1 (Deering) ……………………………… 17, 21

Cal. Bus. & Prof. Code § 3426.2 (Deering) ……………………………………..20

Cal. Bus. & Prof. Code § 3426.5 (Deering) ……………………………………..20

Cal. Bus. & Prof. Code § 17200 (Deering) ………………………………………26

x

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

Cal. Bus. & Prof. Code § 17539 (Deering) …………………………………………22

Cal. Bus. & Prof. Code § 17539.1 (Deering) ………………………………….23

Cal. Bus. & Prof. Code § 17539.3 (Deering)…………………………………… 22

**Rules**

Fed. R. Civ. P. 56 ……………………………………………………………….8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

This isn't how a comedy competition is supposed to end up.  Plaintiff and Counter-defendant Harith Iskander participated in the Laugh Factory Funniest Person in the World Contest in 2016.  He won.  The advertised prize was $100,000 and a U.S. comedy tour.  Despite telling the press that Iskander had won the full $100,000, Defendants and Counter-claimants Laugh Factory, Inc. and Jamie Masada only paid him $10,000.  For the other $90,000, they wanted him to make nine additional trips from his home in Malaysia to Los Angeles for press junkets.  Iskander took several trips and arranged more, but after not being paid, he stopped coming and sought legal recourse.

After filing his action in California State Court, Defendants removed the case to Federal District Court and filed a counterclaim. Since removing the case and filing their counterclaim, in spite of the ample time to conduct discovery and supplement their initial disclosures, Defendants have simply failed to provide any evidence, whatsoever, to support any of their counterclaims. This is because the entire counterclaim is baseless and, like a bad joke, it falls on its face.

Defendants' first and second causes of action for federal and common law trademark infringement fail because the "Laugh Factory" trademarks at issue are not confusingly similar to Iskander's Joke Factory comedy club in Malaysia, were

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

never used  by Iskander, and Defendants are not "senior" users entitled to trademark protection with respect to the alleged infringement.

Defendants' third and fourth causes of action for federal and California trade secret misappropriation fail because Iskander could not have misappropriated Defendants' alleged trade secrets as they do not exist. Defendants have not identified any trade secrets because they have none, and if they have them, they failed to maintain the secrecy of their information.

Defendants' fifth cause of action for breach of contract fails because the nature of the relationship between the parties was a contest under California law, not a contract. Pursuant to California Business and Professions Code, the changes Defendants made to the contest were prohibited so the additional contest terms that were added months after the start of the contest, which Defendants allege Iskander breached, are void as a matter of law.

Defendants' sixth cause of action for unfair competition under Cal. Bus. & Prof. Code § 17200 fails because the undisputed facts show that none of the alleged actions took place in California (or even the United States). Even if the alleged actions had taken place in California, it still fails because the claim is based on the failed allegations of the preceding causes of action.

Defendants' seventh cause of action for intentional interference with prospective economic advantage fails because Iskander did not engage in any wrongful conduct whatsoever.

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

## II.  STATEMENT OF FACTS.

### A.  PROCEDURAL POSTURE

On February 12, 2019 Iskander's action was removed from Superior Court of California in Los Angeles (Court Docket "Document" 1) On February 19 and 27, Defendants filed their answer and counterclaim and then an amended answer and counterclaim. (Documents 8 and 10) On March 18, 2019 the Joint Report Rule 26(f) Discovery Plan was filed. (Document 12) On March 28, 2019 Defendants served their Rule 26 disclosures in response to Iskander's service of his disclosures. (Statement of Undisputed Fact "SUF" 7 and 8) In Defendant's disclosures, they state that they have no witnesses or documents in support of their claims other than the emails attached to the complaint and counterclaim. (SUF 8-10). The parties met and conferred regarding these disclosures, yet Defendants stood on their disclosures and did not ever supplement them. (Declaration of Joseph K Johnson "Johnson Decl." ¶6) The matter is set for trial, and while the parties have sought to resolve the action, and also seek a stay to further mediate, the stipulation to stay was not filed until October 4, 2019 so Iskander must bring this instant Motion today to preserve his rights if the stay is not granted by the Court. (Document 26)

### B.  The Trademarks

On December 15, 2015, the U.S. Patent and Trademark Office ("USPTO") registered the service mark "Joke Factory Comedy Club," which is owned by Joke Factory Comedy Club Productions, LLC, and which relates to class of services 41

3

(for comedy presentations). (SUF 1) On January 15, 1985, the USPTO registered the trade mark and service mark "Laugh Factory," which is owned by Laugh Factory and which relates to class of services 41 (for comedy presentations) and to class of goods 16 and 25 (for comedy magazines and clothing, respectively).  (SUF 2) On October 6, 1992, the USPTO registered the trade mark "Laugh Factory," which is owned by Laugh Factory and which relates to class of goods 18 and 25 (for tote bags and clothing, respectively).  (SUF 3) Iskander's club in Malaysia is named "The Joke Factory." Laugh Factory has not registered its "Laugh Factory" mark in Malaysia. (SFU 4 AND 4(a)) Laugh Factory has not registered the mark "Joke and Yolk" with the USPTO. (SUF5) Masada and Laugh Factory abandoned the use of the mark "Joke and Yolk." (SUF 6) Iskander has not used Laugh Factory's trademarks in any of his business ventures or personal endeavors in Malaysia, California or elsewhere. (SUF 13) Defendants' trademark and trade secret claims, as well as claims deriving therefrom, are based upon alleged acts of Iskander in Malaysia. (SUF 14) In emails between Iskander and Masada, Laugh Factory disclosed that it did not have a location, was unsure how to build the brand there, and had not partnered with anyone in Malaysia.  (SUF 15) Laugh Factory has not opened a comedy club in Malaysia or elsewhere in Asia. (SUF 16)

## C.   <u>The Alleged Trade Secrets</u>

On January 27, 2017, Masada invited Iskander to "come to Los Angeles . . . and see how we run the club . . . .  Once you have seen our operations we can then

4

move onto the next step." (SUF 17) On May 3, 2017, Iskander informed Masada of Iskander's long-standing intention to open a chain of comedy clubs in Kuala Lumpur and Asia "regardless of the outcome of this current negotiation with Laugh Factory." (SUF 18) From June 2 to June 8, 2017, Iskander was in Los Angeles to perform at some comedy clubs. They discussed the comedy business and Laugh Factory's history. During their June 2 to June 8, 2017, discussions, Islander and Masada did not come to an agreement or understanding about bringing the Laugh Factory to Malaysia. During their June 2 to June 8, 2017, discussions, Masada never told Iskander that any of the information Masada shared was a trade secret or subject to confidentiality. Throughout all of Iskander's communications with Masada about the Laugh Factory, Iskander was never presented with or asked to sign a confidentiality agreement or a non-disclosure agreement regarding any aspect of Laugh Factory or its business, operations, trademarks or trade secrets. (SUF 19-22)

Defendants have not applied for the relief afforded to holders of trade secrets by DTSA and CUTSA. Specifically, they have not sought: injunctive relief (18 U.S.C. § 1836(b)(3); Cal. Bus. & Prof. Code § 3426.2(a) (Deering)); protective orders, in-camera hearings, sealing of court records, or orders that anyone involved in the case not to disclose alleged trade secrets without court approval (Cal. Bus. & Prof. Code § 3426.5 (Deering)); or seizure of property to prevent the dissemination of their alleged trade secrets (18 U.S.C. § 1836(b)(2)). (SUF 23) Iskander did not

5

steal Defendants' information, bribe anyone in exchange for Defendants' information, or misrepresent facts or breach a duty of secrecy to Defendants in order obtain the alleged trade secrets. Iskander has not obtained or used any Laugh Factory's alleged trade secrets in any of his business ventures or personal endeavors in Malaysia, California or elsewhere. Iskander's "Joke Factory" comedy club in Malaysia was established and is operated based on his nearly 30 years of experience as a comedian, entertainer, director and producer in Malaysia and elsewhere. (SUF 24-26)

### D.     The Contest

In 2016, Laugh Factory sponsored the "Funniest Person in the World" Contest ("Contest") in which 89 comedians from 56 countries competed for the most votes to win $100,000 and a U.S. comedy tour. Laugh Factory invited Iskander to participate in the Contest. The determination of the winner of the Contest and the $100,000 prize was "skill-based." (SUF 27-29)

In order to enter the Contest, the contestants were required to provide a professional video of their comedy stand-up routine and grant a perpetual license to Laugh Factory for not only that video, but all performances in the contest. Iskander duly entered the Contest. Laugh Factory published the Contest rules on its website. All that the Contest rules said about the $100,000 prize was "The crowned winner of the inaugural Laugh Factory Funniest Person in the World will win **$100,000 (USD)**, and be a part of a paid nationwide tour." The Contest rules imposed no

6

terms or conditions on winning the $100,000 prize, other than entry by submitting the video granting Licenses to Laugh Factory. (SUF 30-34)

During the contest, on November 26, 2016, Defendants unilaterally changed the Contest rules by requiring the winner to make 10 separate trips to the United States, which was not stated in the Contest rules.  On November 30, 2016, Defendants again unilaterally changed the Contest rules by announcing that "The grand prize winner will be paid the $100,000 in 10 installments." Iskander had already incurred expenses and his hundreds of thousands of followers expected him to compete; he could not disappoint them. (SUF 39-41)

Iskander was selected as one of the 20 semi-finalists in the Contest. On December 10, 2016, Iskander won the Contest and was voted the "Funniest Person in the World."  Laugh Factory posted a press release three days later which stated "As the Grand Prize Winner, Harith Iskander was awarded with $100,000 USD." Laugh Factory has not paid Iskander the full $100,000, having only paid him $29,995. (SUF 35-38)

On October 6, 2017, Masada emailed Iskander stating: "As you know, the grand prize of Laugh Factory's Funniest Person in the World Competition was originally $10,000 but everybody involved voted to increase it $90,000 more and have the winner traveling to Los Angeles 9 times throughout the year following the competition to do press and get the name of the winner and the competition as much exposure as possible."  (SUF 42)

7

On April 13, 2018, Masada emailed Iskander stating: "As I explained it to you guys, we increased the grand prize from $10,000 for the [2014 contest, won by Ismo Leikola,] to $100,000 (broken down into 10 payments of $10,000, one for winning and an additional nine (9), providing the winner of LFFPIW actually comes to the U.S. 9 separate times within the year they won to do press.) [*sic*] The purpose of structuring it this way was to make sure the winner actually fulfills their obligations." (SUF 43)

Iskander was unaware of any of these new, unilateral changes to the Contest rules until he got Defendants' emails, after he was already committed to the Contest. (SUF 44) Nowhere do the Rules require the winner to make ten trips (or any trips) to the U.S., to accept payment of the $100,000 grand prize in ten installments, or to condition those payments on the winner making ten trips to the U.S. (SUF 45) Defendants admit to changing the Contest and to not paying Iskander the full $100,000 grand prize.

## III.   ARGUMENT.

### A.   <u>Summary Judgment Standards</u>.

Summary judgment should be granted if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A counter-defendant is entitled to summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and entitled to moving party to judgment as a matter of law.  *Id.* at 323.

Essentially, the moving party does not need to have evidence from which a jury could find an essential element of the opposing party's claim or defense.  *See* Fed. R. Civ. P. 56(c)(1)(B); *Celotex Corp.*, 477 U.S. at 325; *Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000)*; *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The moving party may also support its summary judgment motion by submitting affirmative evidence that disproves an essential element of the opposing party's claim or defense. See *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-60 (1970).

**B.**   **Undisputed Facts Establish Neither that the Marks at Issue are Confusingly Similar Nor that Iskander used Defendants' Trademarks Under Federal Statute.**

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, the plaintiff must show that the defendant used a mark confusingly similar to a valid, protectable trademark that was owned by plaintiff.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) ("Brookfield") "The core element of trademark infringement is the likelihood of confusion, i.e., whether

9

the similarity of the marks is likely to confuse customers about the source of the products." *Id.* at 1053.

### 1. The "Joke Factory" Mark is Not Confusingly Similar to—and Not Infringing Upon—the "Laugh Factory" Mark Because the USPTO Registered Both.

The U.S. Patent and Trademark Office refuses to register trademarks and service marks which so resemble an already registered mark that confusion, mistake or deception are likely. *See* 15 U.S.C. §§ 1052(d), 1053 (service marks registrable in same manner and with same effect as trademarks). The certificate of registration of a mark constitutes prima facie evidence of (a) the mark's validity and registration and (b) the owner's ownership of and exclusive right to use the mark. See id. § 1057(b); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)

Here, the mark "Joke Factory Comedy Club" was registered on December 15, 2015, by the USPTO and is owned by Joke Factory Comedy Club Productions, LLC, in Florida. (SUF 1) The "Laugh Factory" marks were registered by Laugh Factory in 1985 and in 1992. (SUF 2 & 3) Iskander's club in Malaysia is named "The Joke Factory." (SUF 4) Laugh Factory has failed to register its own "Laugh Factory" mark in Malaysia. (SUF 4.5)

The USPTO would not have registered the mark "Joke Factory" if it was confusingly similar to the "Laugh Factory" marks, which had already been registered for thirty and twenty-seven years. Even if there was confusion, which

10

there is not, it is uncontroverted that Laugh Factory failed to register "Laugh Factory" in Malaysia where Iskander's club is located.  Accordingly, Iskander's use of the mark "Joke Factory" for his Malaysian comedy club cannot be considered confusingly similar to, nor can it infringe upon, Defendants' marks.

### 2.   Iskander Has Not Infringed Upon Defendants' Unregistered and Abandoned "Joke and Yolk" Mark.

"It is axiomatic in trademark law that the standard test of ownership is priority of use. . . .  [T]he party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  *See Sengoku Works Ltd., supra*, 96 F.3d at 1219.  And without ownership, there can be no claim for infringement.  *See Brookfield, supra*, 174 F.3d at 1046.

Here, Defendants failed to register the mark "Joke and Yolk" with the USPTO. (SUF 5)  Additionally, Defendants abandoned the use of the mark.  (SUF 6)  Accordingly, since Defendants have neither registered nor used the mark "Joke and Yolk," they cannot show that they own the mark.  Therefore, they cannot show that Iskander infringed upon it.

### 3.   Iskander Has Neither Used Nor Infringed on Any of Defendants' Marks.

To prevail for trademark infringement, the plaintiff must show that the defendant used, reproduced, counterfeited, copied or colorably imitated a mark in marketing goods or services or that is confusingly similar to plaintiff's valid,

11

protectable trademark. *See* 15 U.S.C. § 1114(a); *Brookfield, supra*, 174 F.3d at 1046.

An eight-factor test is used to analyze the likelihood of confusion question in trademark infringement cases. "The eight [*Sleekcraft*] factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines." *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)). The factors are considered helpful guidelines, not hoops a court must jump through to make a determination, nor are they a "mechanistic formula or list" to determine likelihood of confusion. *See id.* at 1404 n.13.

Here, on March 28, 2019, Defendants conceded they have no witnesses or documents in support of their claims other than the emails attached to the Complaint and the Counter-Claim. (SUF 8)  Defendants never served their initial disclosures under Fed. R. Civ. P. 26(a), stating, instead, that the evidence in support of their claims and defenses was to be found in the exhibits to the Complaint and the Counter-Claim. (SUF 7-8)  Nor have Defendants produced any documents, identified any witnesses or presented any evidence whatsoever of the existence of their trademarks or of Iskander's use, reproduction, counterfeiting, coping or

12

imitating their marks in any way.  (SUF 9-10)  Defendants have also failed to produce any evidence regarding any of the *Sleekcraft* factors.  (SUF 12)

Accordingly, then, Defendants' only evidence of the infringement of their trademarks is the evidence contained in the exhibits to the Complaint and the Counter-Claim.  But the exhibits to the Complaint and the Counter-Claim make no reference to the existence or infringement of any of Defendants' trademarks nor do the exhibits refer to Iskander's infringement of Defendants' trademarks.  (SUF 11)  Additionally, the Complaint's and Counter-Claim's exhibits make no reference to any facts relevant to evaluation of the *Sleekcraft* factors.  (SUF 12)  Finally, Iskander has never used Laugh Factory's marks in any of his business ventures or personal  endeavors.  (SUF 13)

Defendants admittedly have no evidence of Iskander's use or infringement of Defendant's trademarks.

**C.   Undisputed Facts Establish No Likelihood of Confusion, No Senior User Status, and No Use or Infringement of Their Mark Under Common Law.**

**1.   There Is No Likelihood of the "Joke Factory" Mark Being Confused with the "Laugh Factory" Mark.**

Common law trademark infringement in California requires proof of (1) plaintiff's prior use of the trademark and (2) the likelihood of the infringing mark being confused with plaintiff's mark.  *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal. 2005).  "Without likelihood of confusion there is no infringement under the California common law of trademarks*." Toho Co. v. Sears,*

13

*Roebuck & Co.,* 645 F.2d 788, 791 (9th Cir. 1981)*; see also Dr. Seuss Enters., L.P.,
supra*, 109 F.3d at 1403.

### a) The USPTO Registered the "Joke Factory" Mark.

The USPTO's registration of the mark "Joke Factory Comedy Club" demonstrates that Iskander's mark is not confusingly similar to Defendants' mark. The "Joke Factory" mark was registered on December 15, 2015, after the "Laugh Factory" marks had been registered for twenty-seven and thirty years.  Since Iskander's club in Malaysia bears the same name which the USPTO found not to be confusingly similar, Iskander cannot have infringed upon Laugh Factory's mark. (SUF 1-4)

### b) Defendants Have Adduced No Evidence that Iskander's Marks are Confusingly Similar to Theirs.

Defendants have produced no evidence of any of the eight *Sleekcraft* factors to establish that any of the marks at issue are confusingly similar to their own. (SUF 7-12)

### 2. Defendants Have No Evidence That They Are the Senior User in the Geographic Area Where They Seek to Enforce Their Marks.

Common law trademark rights are enforceable in a limited,  particular geographic area.  *See Optimal Pets, Inc. v. Nutri-Vet, L.L.C.*, 877 F. Supp. 2d 953, 958 (C.D. Cal. 2012) ("Optimal").  "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of

14

expansion." *Brookfield, supra*, 174 F.3d at 1047; *see also Optimal, supra*, at pp. 958-959.  Thus, to enforce common law trademark rights in a geographical area, the "plaintiff must prove that, in that area, (1) it is the senior user of the mark, and (2) it has established legally sufficient market penetration." *Optimal, supra*, at 959. Market penetration "is determined by examining the trademark user's volume of sales and growth trends, the number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising." *Id.* (quoting *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002)).

Here, Defendants seek to enforce their marks under common law against Iskander in Malaysia.  Although they have produced no witness or documents in support of their claims, their claims are all based on Iskander's conduct in Malaysia.  (SUF 14)

For their claims to stand, Defendants have to show that in Malaysia they are the senior user and have sufficiently penetrated the market (even assuming Iskander had used Defendants' mark, which he did not).  They can show neither. Emails between the parties establish that Defendants had no location in Malaysia and did not know how to make the Laugh Factory brand progress in Malaysia. (SUF 15)  Defendants have not opened a comedy club in Malaysia or anywhere else in Asia, and have neither market presence nor market penetration there.  (SUF 16) Nor have they adduced any evidence of market penetration under *Optimal* and *Glow*.  (SUF 7-12)  Failing to show that they are the senior user of their marks and

15

that they have market penetration, Defendants cannot establish common law trademark infringement against Iskander.

### 3. Iskander Has Neither Used Nor Infringed on Any of Defendants' Marks.

Like Defendants' federal trademark claims, they have also failed here to produce any documentary or testimonial evidence that Iskander used or infringed upon their marks in any way. (SUF 7-13)

### D. **Defendants Have Failed to Show Either the Existence or the Misappropriation of Their Trade Secrets Under Federal or California Statutes.**

For purposes of this brief and Defendants' claims in this case, the terms of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA"), and the California Uniform Trade Secrets Act, Cal. Bus. & Prof. Code § 3426 (Deering) ("CUTSA"), are so almost identical as to render a simultaneous discussion of both such claims most economical here in one section.

### 1. Defendants Have Not Established that They Have Any Trade Secrets.

"Trade secret" under both the DTSA and CUTSA, means essentially the same thing: all information whatever form which

(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public or another person who can obtain economic value from the disclosure or use of the information; and

16

(b)   is subject to the owner's reasonable measures or efforts to keep secret. *See* 18 U.S.C. § 1839(3)[1]; Cal. Bus. & Prof. Code § 3426.1(d) (Deering)[2].

Defendants must show both information deriving independent economic value and that they have reasonably tried to keep it secret. They have done neither.

### a)   Defendants Have Not Identified Any of Their Information That is Valuable Because it is Known to Others.

"Information that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); 18 U.S.C. § 1839(3)(B); Cal. Bus. & Prof. Code § 3426.1(d)(2) (Deering).

Here, Defendants have no trade secrets.  They have yet to identify or produce evidence of any information—or even any class or type of information—in this

---

[1] Under the DTSA,

"the term 'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

    (A) the owner thereof has taken reasonable measures to keep such information secret; and

    (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

(18 U.S.C. § 1839(3).)

[2] Under CUTSA, the term

"'trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

    (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

    (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

(Civil Code § 3426.1(d).)

17

litigation which is valuable because it is known to others.  (SUF 7-11) And mere industry knowledge is insufficient as a trade secret.

### b) Defendants Have Not Taken Reasonable Measures to Keep Their Information Secret.

"Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others. . . .  If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.* (*GJSx*), No. CV 15-08762 RGK (GJSx), 2015 U.S. Dist. LEXIS 190231, at *12-13 (C.D. Cal. Dec. 14, 2015) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)) (internal citations and quotations omitted); *see also Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 633 (1989) ("In the absence of any secret, there could be no trade secret.").

Here, Defendants have not taken reasonable measures to protect the secrecy of their alleged trade secret information.

First, if Iskander obtained any alleged trade secrets of Defendants, it was because Defendants voluntarily disclosed them to him when he and his wife came to Los Angeles in June 2017 at Masada's invitation.  (SUF 19-20) Masada never told Iskander that anything Masada had said was confidential or a trade secret.

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

(SUF 21) On January 27, 2017, Masada wrote to the Iskanders inviting them to come to Los Angeles and "see how we run the club," stating "[o]nce you have seen our operations we can then move on to the next step." (SUF 17 ) On May 3, 2017, Mrs. Iskander emailed Masada stating that she and Iskander "will be opening up a chain of comedy clubs in Kuala Lumpur and eventually Asia regardless of the outcome of this current negotiation with Laugh Factory." (SUF 18 )

From June 2 to June 8, 2017, Iskander and his wife were in Los Angeles where he performed at several comedy clubs. (SUF 19) During this visit, Iskander met with Masada to discuss the comedy business and Defendant Laugh Factory's history. (SUF 19) They had no agreement regarding the bringing the Laugh Factory to Malaysia. (SUF 20) Masada was on notice that Iskander intended to open comedy clubs in Malaysia and Asia whether they made a deal or not. (SUF 18) But Masada never told Iskander that any of the information Masada shared was a trade secret or confidential. (SUF 21)

Second, Defendants failed to take reasonable measures to keep their information secret. Despite Iskander's openness about his plans, Defendants never required him to sign a confidentiality or non-disclosure agreement before sharing "how they run the club" and their "operations." (SUF 17-18, 22) Nor have Defendants made any showing of efforts made to keep their alleged trade secrets safe in the normal course of business. (SUF 7-11)

19

Third, Defendants have not sought injunctive relief or protective orders or to file their papers under seal with the Court in this matter, as permitted by DTSA and CUTSA.  *See* 18 U.S.C. § 1836(b)(3) (authorizing injunctive relief); Cal. Bus. & Prof. Code § 3426.2(a) (Deering) ("Actual or threatened misappropriation may be enjoined"); *id.* § 3426.5 (Deering) (authorizing the court to grant protective orders, hold in-camera hearings, seal court records, and order anyone involved in the case not to disclose alleged trade secrets without court approval). Nor have Defendants sought seizure of property to prevent the dissemination of their alleged trade secrets.  *See* 18 U.S.C. § 1836(b)(2).  (SUF 23)

In short, Defendants have not acted like they have any trade secrets and they have produced no evidence that they do.

### 2.    Defendants Have Not Established that Iskander Misappropriated Their Trade Secrets.

"Misappropriation" under both DTSA and CUTSA means:

(A)    acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B)    disclosure or use of a trade secret of another without express or implied consent by a person who—

(i)    used improper means to acquire knowledge of the trade secret; or

(ii)   at the time of disclosure or use, knew or had reason to know that the [person's] knowledge of the trade secret was—

(I)    derived from or through a person who had used improper means to acquire the trade secret;

20

(II) acquired under circumstances giving rise to a
duty to maintain the secrecy of the trade secret
or limit the use of the trade secret; or

(III) derived from or through a person who owed
a duty to the person seeking relief to maintain
the secrecy of the trade secret or limit the use of
the trade secret; or

(iii) before a material change of the position of the
person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been
acquired by accident or mistake;

*Id.* § 1839(5); Cal. Bus. & Prof. Code § 3426.1(b) (Deering).

"Improper means" under both DTSA and CUTSA includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but excludes reverse engineering, independent derivation, or, in the case of DTSA, any other means of lawful acquisition.  18 U.S.C. § 1839(6); Cal. Bus. & Prof. Code § 3426.1(a) (Deering).

Here, Defendants have failed to meet their burden of establishing that Iskander misappropriated their alleged trade secrets.  Iskander has neither obtained nor used any of Defendants' alleged trade secrets in his business or other activities in California, Malaysia or anywhere else.  (SUF 25)  Defendants point to no improper means of Iskander acquiring such information, if it exists.  (SUF 7-11) There was no theft, bribery, misrepresentation or breach of a duty of secrecy (in part because there was no such duty).  (SUF 24)  In fact, Defendants invited Iskander to their club *for the express purpose* of showing him how they run their

21

operations without requiring his secrecy knowing of his plans to open a comedy club in Malaysia with or without them.  (SUF 17-22)

### E.  Laugh Factory's Claim for Breach of Written Contract Fails Because There is no Evidence that Laugh Factory's Additional (Breached) Terms Identified in its Counter-claim were Initially Disclosed Which is a Violation of Bus. & Prof. Code § 17539, the Law Regulating Contests in California.

The California Legislature specifically passed Cal. Bus. & Prof. Code § 17539 (Deering) because "there is a compelling need for more complete disclosure of rules and operation of contests."

### 1.  It is Undisputed That The Contract Laugh Factory Alleges That Iskander Breached Was In Fact a Contest as Defined by Bus. & Prof. Code, § 17539.3(e).

A contest is defined under the Code as:

> "any game, contest, puzzle, scheme, or plan that holds out or offers to prospective participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and that is, or in whole or in part may be, conditioned upon the payment of consideration."

Cal. Bus. & Prof. Code, § 17539.3(e) (Deering).

It is undisputed that in 2016, Laugh Factory sponsored the Funniest Person in the World Contest which involved a group of 89 comedians from 56 countries around the world competing to get the most votes to win a prize. (SUF 27). It is uncontested that Laugh Factory offered to Iskander the opportunity to compete for a prize and that the prize would be determined by skill. (SUF 28) Section 4 of the Contest's Official Rules and Regulations ("Rules") clearly states that "[t]his is a

22

skill-based contest." (SUF 29). The consideration for entering the Contest was providing a professional video of the comedian's stand-up routine and a perpetual license to Laugh Factory for not only that video, but all performances in the contest. (SUF 30)  Iskander duly entered the Contest.  (SUF 31)

### 2.    It is Undisputed That The Laugh Factory's Contest Violated Bus. & Prof. Code, § 17539.1(a).

In order to protect consumers, the Legislature declared that certain acts, including those which Laugh Factory has admitted to committing in its Counterclaim, are "unfair" and "prohibited."  These acts are spelled out in Bus. & Prof. Code, § 17539.1(a) in pertinent part as follows:

> (a) The following unfair acts or practices undertaken by, or omissions of, any person in the operation of any contest or sweepstakes are prohibited:
> …
>    (4) Misrepresenting in any manner, the rules, terms, or conditions of participation in a contest.
> …
>    (6) Failing to clearly and conspicuously disclose the exact nature and approximate value of the prizes when offered.
> …
>    (7) Failing to award and distribute all prizes of the value and type represented.

Bus. & Prof. Code, § 17539.1

Laugh Factory first explained the Contest to Iskander in June 2016. (SUF 28)  Laugh Factory subsequently published the Rules on its website. (SUF 32) Regarding the grand prize, all the Rules said was "The crowned winner of the inaugural Laugh Factory Funniest Person in the World will win **$100,000 (USD)**,

23

and be a part of a paid nationwide tour." (SUF 33 (emphasis in original))  The Rules imposed no terms or conditions on winning the $100,000 prize other than entering by providing the video and granting Laugh Factory a perpetual license. (SUF 34)

Iskander entered the Contest and was selected to be in the semi-finals. (SUF 31, 35)  On December 10, 2016, Iskander won the Contest and was voted the "Funniest Person in the World."  (SUF 36) Laugh Factory posted a press release three days later which stated "As the Grand Prize Winner, Harith Iskander was awarded with $100,000 USD."  (SUF 37)

Laugh Factory never paid Iskander the $100,000.  (SUF 38)  It has only paid him $29,995.  (SUF 38)

After Iskander entered the Contest but before he won on December 10, 2016, Laugh Factory unilaterally changed the Contest's terms and conditions.  The modified  Contest terms would require winner to make ten separate trips to the U.S., pay the $100,000 grand prize in ten installments, and condition each of those ten installment payments upon the winner making one of the required ten trips to the U.S.  (SUF 39-40, 43)

Specifically, on November 26, 2016, Defendants unilaterally changed the Contest rules by requiring the winner to make 10 separate trips to the United States, which was not stated in the Contest rules.  (SUF 39)  Then on November 30, 2016, Defendants again unilaterally changed the Contest rules by announcing that "The

24

grand prize winner will be paid the $100,000 in 10 installments." (SUF 40) These changes came nine and five days, respectively, before the final round of the Contest was to begin in Helsinki, Finland. Iskander could not back out of the Contest because he had already incurred expenses and, more importantly, he couldn't disappoint his hundreds of thousands of followers who had supported him. (SUF 41) Strangely, Laugh Factory never made these changes to the Rules, and only communicated them via email to Iskander months after he had entered the Contest.

After the Contest was over, Masada emailed Iskander about how and why he had changed the Contest. On October 6, 2017, and on April 13, 2018, Masada emailed Iskander telling him that the Contest organizers knew they were going to make the ten payments conditioned on trips to the U.S. "to make sure the winner actually fulfills their obligations." (SUF 42-43) But the Rules of the Contest included no such obligations. (SUF 34) And Iskander had no knowledge of these conditions until they were unilaterally imposed upon him by Defendants after he was already irrevocably committed to the Contest. (SUF 44-45)

In their own Counter-claim, Defendants admit, first, that they changed the Contest reducing the grand prize from (a) $100,000 with a paid U.S. tour to (b) $10,000 contingent upon a trip to the U.S. taken at the winner's expense, and, second, that they did not award all of the $100,000 prize to Iskander. (SUF 46)

Defendants' alleged "Contract" is clearly and unambiguously the Official Rules and Regulations of the Contest, and does not include the subsequent illegal

additions to the Rules made by Laugh Factory, which it has claimed were breached by Iskander. There was no breach because those subsequent additions to the Rules were prohibited by California law. Therefore, Defendants' Counter-claim for breach of written contract fails.

### F.   Undisputed Facts Show that All Acts Complained of Occurred in Malaysia Rendering Inapplicable the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 (Deering).

Cal. Bus. & Prof. Code § 17200 *et seq*. (Deering), only provides recourse where there has been some injury to California consumers.  Because violation of California's unfair competition law ("UCL") is a state law claim, "the UCL reaches any unlawful business act or practice underlined committed in California." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) (emphasis added).  However, neither the statutory language of the UCL, nor its legislative history provide any basis to conclude the legislature intended the statute to operate extraterritorially outside California.  *Id.* at 1207.  In fact, the presumption against extraterritorial application of the UCL applies in full force.  *Id; Fontenberry v. MV Transp. Inc.*, 984 F. Supp. 2d 1062, 1067 (E.D. Cal. 2013) (quoting *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)).  The entire purpose of the statutory scheme is to protect California consumers, and where there is no conduct in California, there is no basis to maintain a claim under § 17200.

Here, Defendants' § 17200 claim is based entirely upon the previous allegations of the Counterclaim: the alleged trademark infringement and trade

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**

secret misappropriation.  But those actions occurred in Malaysia, if at all, beyond the statutory reach of the UCL. (SUF 4, 13-14, 25-26) And neither Defendant is an injured California consumer.  Accordingly, there is no basis for relief under § 17200.

Moreover, Defendants' § 17200 claim is derivative of their other, failed claims.  It relies upon the claims for alleged trademark infringement and trade secret misappropriation.  Because none of those claims can withstand summary judgment,  neither does Defendants' § 17200 claim.

### G.   Undisputed Facts Show There was No Wrongful Conduct Giving Rise to Intentional Interference with Prospective Economic Advantage.

To prevail on a claim for intentional interference with prospective economic advantage, the interfering conduct must be "wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (1995).  There must be an independently wrongful act, which means an unlawful act, that is, an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.  *See San Jose Construction, Inc. v.S.B.C.C., San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544–45 (2007).  The tort only imposes liability for disrupting the business relationship of another by improper methods which fall outside the boundaries of fair competition.  *See Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 845 (1993) (internal citation omitted).

27

Conversely, "under [the competition] privilege, a competitor is free to divert business to himself as long as he uses fair and reasonable means." *I-CA Enters., Inc. v. Palram Americas, Inc.*, 235 Cal. App. 4th 257, 292–93 (2015) (internal citations and quotations omitted). This privilege results in a shift of the burden of proof—to the plaintiff—to prove that the defendant's conduct was independently wrongful and not privileged. See Bed, Bath & Beyond of La. Jolla, Inc. v. La. Jolla Vill. Square Venture Partners, 52 Cal. App. 4th 867, 881 (1997).

Here, Defendants allege that they had prospective ventures and relationships in Asia which were disrupted by Iskander's unlawful means, namely his alleged trade secret misappropriation. (SUF 47)

As with Defendants' § 17200 claim, this entire claim is based on earlier claims for trade secret misappropriation, for which no prima facie case can be made. To be actionable for intentional interference, Iskander's conduct must be unlawful. If it is not, then it is privileged and he is free to divert and disrupt Defendants' ventures and relationships. Defendants bear the burden of proof on these points. They fail here because they failed, above, to establish unlawful conduct for trade secret misappropriation and trademark infringement. (SUF 7-11)

## IV.   CONCLUSION.

For the reasons given above, Iskander respectfully requests the Court to grant summary judgment or, in the alternative, partial summary judgment.

28

Respectfully submitted,

DATED:  October 7, 2019     **LAW OFFICE OF JOSEPH K. JOHNSON, PC**

By:  _____*/s/ Joseph K. Johnson*_____
                Joseph K. Johnson

*Attorneys for Plaintiff and Counter-Defendant*

**ISKANDER'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**