UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

Present:    <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

> Deputy Clerk:                          Court Reporter:
> Rita Sanchez                           Not Reported
>
> Attorneys Present for Plaintiff:       Attorneys Present for Defendants:
> Joseph K. Johnson                      Clifton W. Albright
> David H. Culmer                        Johnny D. Griggs

**Proceedings (In Chambers):**   ORDER RE: PLAINTIFF AND COUNTER
                                 DEFENDANT'S MOTION FOR SUMMARY
                                 JUDGMENT [27]

      Before the Court is Plaintiff and Counter-Defendant Harith Iskander's Motion
for Summary Judgment or, in the Alternative, Partial Summary Judgment (the "MSJ"),
filed on October 7, 2019.  (Docket Nos. 27, 33).  Defendants and Counter-Claimants
Laugh Factory, Inc. and Jamie Masada (collectively, the "Laugh Factory Defendants")
filed an Opposition on January 13, 2020.  (Docket No. 39).  Plaintiff did not file a
Reply.

      The Court read and considered the papers submitted on the MSJ, and held a
hearing on **February 6, 2020**.

      For the reasons set forth below, the MSJ is **GRANTED** *in part* and **DENIED** *in
part* **as** follows:

- **GRANTED** as to Defendants' trade secret misappropriation
  counterclaims;

- **GRANTED** as to Defendants' trademark infringement counterclaims with
  respect to Plaintiff's use of the "Joke & Lok" mark;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:     Harith Iskander v. Laugh Factory, Inc. et al.

- **DENIED** as to Defendants' trademark infringement counterclaims with respect to Plaintiff's use of "The Joke Factory" mark;

- **DENIED** as to Defendants' unfair competition counterclaim;

- **DENIED** as to Defendants' breach of contract counterclaim;

- **DENIED** as to Defendants' intentional interference with prospective economic advantage counterclaim.

## I.     BACKGROUND

Plaintiff commenced this action on December 10, 2018, in the Los Angeles County Superior Court. (*See* Complaint ("Compl.") (Docket No. 1-1)).  Plaintiff brings eight claims for relief against the Laugh Factory Defendants for: (1) promissory fraud; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) declaratory relief; (7) misleading advertising; and (8) unfair competition, for allegedly failing to pay Plaintiff according to the terms of a comedy competition Plaintiff won.  (*Id.* ¶¶ 19-89).  On February 12, 2019, Defendants removed the action to this Court.  (*See* Notice of Removal (Docket No. 1)).

On February 27, 2019, Defendants filed an amended answer and counterclaims alleging: (1) trademark infringement pursuant to 15 U.S.C. § 1114; (2) common law trademark infringement; (3) trade secret misappropriation pursuant to 18 U.S.C. § 1836(b); (4) trade secret misappropriation pursuant to California Civil Code § 3426; (5) breach of contract; (6) unfair competition; and (7) intentional interference with prospective economic advantage, because Plaintiff allegedly usurped Defendants' trademark and trade secrets to open a "Joke Factory" comedy club in Malaysia. (Docket No. 10 ¶¶ 31-68).

The following facts are based on the evidence, as viewed in the light most favorable to the Laugh Factory Defendants, the non-moving parties.  *Anderson v.*

---

**CIVIL MINUTES—GENERAL                                        2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:       Harith Iskander v. Laugh Factory, Inc. et al.

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [her, or its] favor.").

Plaintiff Harith Iskander ("Plaintiff" or "Iskander") is a Malaysian comedian and entertainer who co-founded the Joke Factory comedy club located in Kuala Lumpur, Malaysia, in 2018.  (Defendants' Response to Plaintiff's Statement of Uncontroverted Facts ("SUF") Nos. 4, 26 (Docket No. 40)).  Defendant Jamie Masada ("Masada") is the owner and Chief Executive Officer of Defendant Laugh Factory, Inc., ("Laugh Factory") comedy club located in Hollywood, California, which Masada opened in 1979.  (Declaration of Jamie Masada dated January 13, 2020 ("Masada Decl.") ¶ 3 (Docket No. 40-1)).

A.    **Trademark Registrations**

There are several trademarks and service marks in dispute.  On January 15, 1985, the U.S. Patent and Trademark Office ("USPTO") registered the trademark and service mark "Laugh Factory," which is owned by Laugh Factory and relates to comedy presentations, magazines, and clothing.  (SUF No. 2).  On October 6, 1992, the USPTO registered the trademark "Laugh Factory," which is owned by Laugh Factory and relates to clothing and other goods.  (SUF No. 3).  Over two decades later, on December 15, 2015, the USPTO registered the service mark "Joke Factory Comedy Club," which is owned by third-party Joke Factory Comedy Club Productions, LLC and relates to comedy presentations.  (SUF No. 1).  Laugh Factory has not registered its "Laugh Factory" mark in Malaysia, (SUF No. 4(a)), or the mark "Joke and Yolk" with the USPTO.  (SUF No. 5).

B.    **Funniest Person in the World Contest**

In 2016, Laugh Factory sponsored the "Funniest Person in the World" Contest ("FPITW Contest") in which 89 comedians from 56 countries competed for the most votes to win a $100,000 prize and a Lugh Factory-sponsored comedy tour in the United States.  (SUF No. 27).  On or about June 8, 2016, Shaan Joshi ("Joshi"), a Laugh

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:       Harith Iskander v. Laugh Factory, Inc. et al.

Factory employee, invited Iskander to participate in the FPITW Contest.  (SUF No. 28).  Iskander entered the FPITW Contest around August 2016 by submitting a video of his comedy stand-up routine and granting Laugh Factory a perpetual license to use all of his FPITW Contest performances, including the entry submission.  (SUF Nos. 30, 31).  Laugh Factory published the official FPITW Contest rules ("Rules") on its website, which read, in relevant part:

> B) The top twenty semifinalists will receive an invitation to perform in Helsinki, Finland in front of a panel of experts and celebrities. Each will receive **$1,000 (USD) plus gifts** each for their performance.

> C) The chosen five will advance to the final round which will take place in Helsinki, Finland in front of an audience and broadcast live on YouTube.  The winner will be determined by a worldwide voting online audience.

> D) GRAND PRIZE: The crowned winner of the inaugural *Laugh Factory Funniest Person in the World* will win **$100,000 (USD)**, and be a part of a paid nationwide tour.

(SUF Nos. 32, 33) (alterations in original).

Although no changes were made to the Rules on its website, Laugh Factory later amended the FPITW Contest rules to require the $100,000 prize money to be paid to the winner in installments of $10,000, upon completion of the trip to Finland for the FPITW Contest semifinals and finals, and subsequent trips to the United States for promotional performances ("Amended Rules").  (*See* Masada Decl., ¶¶ 37, 38).  On or about November 26, 2016, Masada emailed the FPITW contestants to inform them that the winner "must make ten scheduled trips to the United States to allow [Laugh Factory] to help [him or her] become one of the biggest comedians in the world." (Masada Decl., ¶ 38, Ex. 26).  Iskander responded to Masada's email confirming that he understood the Amended Rules.  (*Id.*).  Three days later, Masada contacted the

---

**CIVIL MINUTES—GENERAL                                    4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:     Harith Iskander v. Laugh Factory, Inc. et al.

FPITW contestants again to explain that the grand prize winner would be paid the $100,000 prize in 10 installments and that Laugh Factory would coordinate with the winner's schedule to arrange travel to the United States for publicity purposes.  (*See* Masada Decl., ¶ 39, Ex. 27).

On December 10, 2016, Iskander was officially crowned the "Funniest Person in the World" and Laugh Factory issued a press release a few days later claiming that "Iskander was awarded [a] $100,000 USD" grand prize.  (SUF Nos. 36, 37).  After Iskander's victory, he and Masada briefly discussed possibly "work[ing] something out . . . in terms of the number of times [Iskander] would need to travel to the States in order to collect [his] prize money."  (Masada Decl., ¶ 41, Ex. 8).  Iskander proposed an arrangement in which an extended trip to the United States (e.g. for 30 days) may qualify as three or four trips under the Amended Rules.  (*Id.*).  On or about January 30, 2017, Iskander notified Masada that he was planning a trip to Los Angeles in February and that he considered this February trip as his "first" U.S. trip pursuant to the Amended Rules and expected to receive his second prize payment of $10,000 while he was in Los Angeles.  (*See* Masada Decl., ¶ 20, Ex. 10).

After Iskander visited Los Angeles in June and September 2017 without performing, on or about October 6, 2017, Masada emailed Iskander to express his concerns about the lack of press.  (SUF Nos. 19, 42; *see also* Masada Decl., ¶ 22).  Iskander made no further trips to the United States in connection with the FPITW Contest.  On or about May 2, 2018, Masada sent Iskander an email demanding that he refund $20,000 of the $30,000 Laugh Factory paid him for promotional performances that never occurred during his Los Angeles visits.  (*See* Masada Decl., ¶ 45, Ex. 30).  Thus far, Laugh Factory has paid Iskander approximately $30,000 of the FPITW Contest grand prize.  (SUF No. 38).

## C.    Iskander and Laugh Factory's Contemplated Partnership in Asia

In September 2016, Iskander proposed partnering with Masada to expand the Laugh Factory brand in Asia.  (*See* Masada Decl., ¶ 38; Declaration of Shaan Joshi

---

**CIVIL MINUTES—GENERAL                          5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:       Harith Iskander v. Laugh Factory, Inc. et al.

dated January 13, 2020 ("Joshi Decl.") ¶ 5 (Docket No. 40-2)).  As of January 2017, Iskander initially estimated that "the cost to open three stand-alone clubs in the region (initially in Kuala Lumpur, Singapore, and Jakarta) would be around the USD 120,000 to USD 130,000 mark."  (*See* Masada Decl., ¶ 41, Ex. 8).  On or about January 27, 2017, Masada invited Iskander and his wife and manager—Dr. Jezamine Lim Iskander ("Lim")—to visit Laugh Factory's flagship location in Hollywood to "see how we run the club" and familiarize themselves with Laugh Factory's operations before the parties could move onto "the next step."  (SUF No. 17).  On or around March 15, 2017, Iskander emailed Masada to "state [his] case" as to why he should be granted licensing rights to "Laugh Factory" in South East Asia.  (*See* Masada Decl., ¶ 21, Ex. 11).

On or around April 13, 2017, Iskander suggested placing 100,000 in Malaysian Ringgits ("MYR") into an escrow account to assure Defendants he was committed to collaborating on a comedy club in Malaysia.  (SUF No. 15).  On or around April 24, 2017, Steve Pillemer ("Pillemer"), a Laugh Factory employee, informed Iskander that Laugh Factory deemed 100,000 MYR—which was equivalent to approximately $22,000—insufficient financial collateral to secure a deal and requested a minimum $100,000 investment.  On or around April 28, 2017, Pillemer contacted Iskander to impose a May 15th deadline for the parties to finalize their partnership because Laugh Factory had other offers to collaborate in Asia.  (*Id.*).  On or around May 3, 2017, Lim replied to Masada explaining that Iskander could not afford $100,000 and countering Laugh Factory's offer with $30,000.  Lim also revealed Iskander's intention to open a chain of comedy clubs in Kuala Lumpur and throughout Asia "regardless of the outcome of [his] negotiation with Laugh Factory."  (SUF No. 18).

Ultimately, the parties' contemplated partnership never martialized.  In 2018, Iskander opened "The Joke Factory" comedy club in Kuala Lumpur, Malaysia.  (SUF No. 26).  Laugh Factory has not opened a comedy club in Malaysia or elsewhere in Asia.  (SUF No. 16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

## II.    **REQUEST FOR JUDICIAL NOTICE**

In conjunction with the MSJ, Plaintiff requests that the Court take judicial notice of seven items: (1) all court records and pleadings in the present action; (2)-(4) various trademarks and service marks issued by the USPTO ("Exhibits 1-3"); (5) summary of "Laugh Factory" search results from USPTO's online Trademark Electronic Search System ("TESS") ("Exhibit 4"); (6) summary of "Laugh Factory" search results from the Association of Southeast Asian Nations' online trademark database ("ASEAN TMview") ("Exhibit 5"); (7) summary of "Laugh" search results from ASEAN TMview ("Exhibit 6"); (8) Laugh Factory's webpage regarding the Official Rules and Regulations of Laugh Factory's Funniest Person in the World 2016 Contest ("Exhibit 7").  (*See* Request for Judicial Notice ("RJN") (Docket No. 32)).  Defendants do not oppose this request.

Under Federal Rule of Evidence 201, a court may take judicial notice of court filings and other matters of public record.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). The Court does not, however, take judicial notice of reasonably disputed facts contained within the judicially noticed documents.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

The Court concludes that each of the requested documents is either an official public record or a record whose accuracy can be ascertained by a readily accessible source whose authenticity cannot be reasonably questioned.  Accordingly, the RJN is **GRANTED**.

## III.   **EVIDENTIARY OBJECTIONS**

At the hearing, Plaintiff asked the Court to exclude all of the evidence Defendants presented in opposition to the MSJ because Plaintiff alleges he never received Defendants' Rule 26(a) disclosures.  Under Fed. R. Civ. P. 37(c)(1), "[i]f a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff argues that he was "handcuffed" from adequately preparing his case because Defendants never served their initial disclosures.  The Court disagrees.  First, Plaintiff is listed as the sender or as a recipient on many of the email communications he now seeks to exclude.  Second, it appears that Plaintiff never attempted to gather additional evidence through discovery by serving interrogatories, requesting documents, or conducting depositions.  Even without Defendants' initial disclosures, at the very least, Plaintiff could have requested to depose Masada, the Laugh Factory owner, to glean the information contained in his declaration.  (*See* Docket No. 40-1). Masada is not an unknown third-party witness whose non-disclosure crippled Plaintiff's case.  Masada is arguably the main witness on the other side of this business dispute.  Surely, the importance of getting his testimony did not have to be disclosed to Plaintiff.  Yet, Plaintiff sat on his hands and waited until the summary judgment hearing to argue that Masada's declaration, and the documents attached thereto, should be excluded.  Similarly, Shaan Joshi, the other declarant whose testimony Plaintiff now seeks to exclude (*see* Docket No. 40-2), was the Laugh Factory employee who initially invited Plaintiff to participate in the FPITW Contest.  Thus, like Masada, Joshi's relevance to the instant case should come as no surprise to Plaintiff.

Based on the evidentiary record, the Court holds that Defendants' alleged failure to serve Rule 26(a) disclosures identifying Masada and Joshi as potential witnesses was harmless.  Therefore, to the extent the Court relies upon evidence to which Plaintiff objects, the objections are **OVERRULED**.  To the extent the Court does not, the objections are **DENIED *as moot***.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:        Harith Iskander v. Laugh Factory, Inc. et al.

## IV.  **LEGAL STANDARD**

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249-50.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

*Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

## V.    **DISCUSSION**

### A.    **Trademark Claims**

Iskander argues in his MSJ that Defendants' counterclaims for trademark infringement under the Lanham Act and for common law trademark infringement must be summarily adjudicated in his favor because the Laugh Factory Defendants cannot show that they own a valid, protectable trademark for the mark "Joke and Yolk" or that Iskander naming his Malaysian comedy club "The Joke Factory" infringes upon Defendants' "Laugh Factory" mark.  (MSJ at 10-13).

To prevail on a trademark infringement claim, Defendants must show that (1) they have a protected ownership interest in the marks at issue, and (2) Plaintiff's use of those marks is likely to cause consumer confusion.  *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Defendants argue that Plaintiff naming the restaurant located inside "The Joke Factory" establishment, "Joke & Lok," infringes upon Defendants' "Joke and Yolk" mark; however, Defendants fail to present any evidence they own the "Joke and Yolk" mark.  *See Pom Wonderful LLC v. Hubbard, Jr.*, 775 F.3d 1118, 1124 (9th Cir. 2014) (concluding that registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration).  In fact, Masada reveals that he abandoned the "Joke and Yolk" mark in favor of the "Laugh Factory" mark when he originally opened his comedy club over thirty years ago.  (*See* Masada Decl., ¶ 29).  Therefore, Defendants cannot prove Plaintiff infringed upon a mark they never registered and admittedly abandoned.  The Court thus **GRANTS** Plaintiff's MSJ as to Defendants' trademark infringement counterclaims with respect to the "Joke & Lok" mark.

Defendants also argue that Plaintiff naming his comedy club "The Joke Factory" infringes upon their "Laugh Factory" brand.  There is no dispute that Defendants meet

---

**CIVIL MINUTES—GENERAL**                                    **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

the first element and have a protected ownership interest in the "Laugh Factory" mark. Thus, "[t]he core element of [Defendants'] trademark infringement [counterclaim] is whether customers are likely to be confused about the source or sponsorship" of Plaintiff's comedy club. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135-36 (9th Cir. 2006) (holding district court decision on similarity of two marks was not clearly erroneous despite lack of identical resemblance).

In evaluating the likelihood of confusion, the Court employs the eight-factor test articulated by the Ninth Circuit in *AMG Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors include, but are not limited to, the strength of the senior mark, the proximity of the goods, the similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and the degree of care likely to be exercised by the purchaser, Plaintiff's intent in selecting the mark, and the likelihood of expansion of the product lines. *Id.* The Court is to consider the *Sleekcraft* factors holistically and not treat them as a mere checklist. *Pom Wonderful*, 775 F.3d at 1125 ("[D]espite the important role that the *Sleekcraft* factors play in determining whether a likelihood of confusion exists, it is the totality of facts in a given case that is dispositive.").

Here, the USPTO registered Defendants' "Laugh Factory" marks in 1985 and in 1992 for comedy presentations, magazines, clothing, and other goods. In 2015, the USPTO also registered a "Joke Factory Comedy Club" mark—which is owned by third-party Joke Factory Comedy Club Productions, LLC—for comedy presentations. At the hearing, Plaintiff argued that Defendants have no standing to defend the "Joke Factory Comedy Club" mark because it belongs to a third-party. However, it is clear from the pleadings that Defendants are not seeking to protect the "Joke Factory Comedy Club" mark from infringement; rather, their position is that Plaintiff's use of "The Joke Factory" name infringes upon their "Laugh Factory" marks. Thus, Plaintiff's standing argument is moot. At the hearing, Plaintiff also argued that Defendants waived their right to defend the "Laugh Factory" marks because they allowed the USPTO to register the "Joke Factory Comedy Club" mark in 2015 without protesting. The Court finds this argument unpersuasive, however, because the record

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  LA CV-19-1076-MWF (JEMx)** | **Date:  March 17, 2020** |
| Title:      Harith Iskander v. Laugh Factory, Inc. et al. | |

is devoid of any evidence regarding when Defendants became aware of the "Joke Factory Comedy Club" mark or whether they objected to it.

In addition, Plaintiff argues that the USPTO would not have registered the "Joke Factory Comedy Club" mark if it was confusingly similar to Defendants' "Laugh Factory" marks.  (MSJ at 21-22).  Plaintiff further argues that even if there could be consumer confusion, Defendants are not entitled to trademark protection because they never registered "Laugh Factory" in Malaysia where Plaintiff's "The Joke Factory" comedy club is located.  (*Id.*).  In response, Defendants contend that the "Laugh Factory" brand enjoys international recognition, including in Malaysia and throughout Asia; therefore, Defendants' "Laugh Factory" marks are entitled to trademark protection in Malaysia even though Defendants did not register them abroad.  (Opp. at 19).  Defendants also offer evidence of actual confusion, including Malaysian news articles associating Iskander's comedy club with the Laugh Factory and Masada's assertion that several comics performing and travelling in Asia contacted him about Iskander's "Joke Factory" comedy club because they mistakenly believed it was endorsed by the Laugh Factory.  (*See* Masada Decl., ¶¶ 28-29, Ex. 15).

Weighing the *Sleekcraft* factors here raises questions of fact that are best left to the jury.  The strength of the "Laugh Factory" mark in Malaysia, Iskander's intent in selecting "The Joke Factory" mark—particularly, given his affiliation with the Laugh Factory as the winner of the Laugh Factory's FPITW Contest—and whether "The Joke Factory" has caused consumer confusion, are all disputed issues that should go to the jury.  The Court thus **DENIES** Plaintiff's MSJ as to Defendants' trademark infringement counterclaims with respect to "The Joke Factory" mark.

## B.    Trade Secret Claims

Iskander argues the Laugh Factory Defendants have no evidence to successfully prove their trade secret counterclaims—violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA") and violation of California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("UTSA").  (MSJ at 27-33).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

Under both the DTSA and UTSA, a trade secret is information that (1) derives economic value from not being generally known and (2) is subject to reasonable measures of secrecy by its owner.  *See* 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(2); *see also Rockwell Collins v. Wallace*, No. 17-cv-01369 AG, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017).  To establish trade secret misappropriation, the Laugh Factory Defendants must present evidence showing they owned a trade secret, that Iskander acquired it through improper means, and that this misappropriation caused them harm.  *See Rockwell*, 2017 WL 5502775 at *2.

## 1.  **Ownership**

Iskander contends that he could not have violated the DTSA or UTSA because no evidence establishes that the general information Masada shared with him regarding how to operate a successful comedy club constitutes a "trade secret."  (MSJ at 28-29).  Defendants counter that there is abundant evidence the detailed information Masada disclosed to Iskander qualifies as a trade secret.

Masada asserts that Iskander visited Los Angeles in September 2017 and March 2018 and he "taught [Iskander] nearly everything [he] knew about running comedy clubs, information that has taken [him] some 40 years to acquire, and information [he has] never revealed to a competitor, including: (1) the design and layout of the Laugh Factory comedy clubs; (2) the use of signage and promotions to generate sponsorship revenue; (3) the common pitfalls that have caused other comedy clubs to open and close within a short period of time; (4) exemplars of contracts with comedians and effective negotiating techniques; (5) financial data on the Laugh Factory's sources of income and profit margins; (6) employee handbooks; and (7) approaches to acquire real estate.  (*See* Masada Decl., ¶¶ 22-25, 34).

Iskander responds that Defendants' alleged trade secrets are already in the public domain and information in the public domain cannot constitute a trade secret.  Indeed, the Supreme Court has cited with approval the general proposition that "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret."  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (citation omitted);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

*accord Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465-66 (9th Cir. 1990); *see also* 18 U.S.C. § 1839(3)(B) ("[T]he information derives independent economic value . . . from not being generally known to . . . another person who can obtain economic value from the disclosure or use of the information.").

Here, the Court finds that the information Defendants attempt to characterize as "trade secrets" simply consists of general business operations strategies (e.g. using signage and promotions to generate sponsorship revenue or acquiring real estate) that do not qualify for such protection.  *See* 18 U.S.C. § 1839(3).  Accordingly, the Court rejects Defendants' argument that Iskander misappropriated their trade secrets.

### 2.      Reasonable Efforts to Maintain Secrecy

Even if Defendants' business operations strategies could qualify as trade secrets, Defendants must also demonstrate that they took reasonable measures to keep the information confidential.  "Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the trade secret protects his interest from disclosure to others."  *Mobile Active Def., Inc. v. Los Angeles Unified Sch. Dist.*, No. CV 15-08762-RGK (GJSx), 2015 WL 12860491, at *5 (C.D. Cal. Dec. 14, 2015) (citing *Ruckelshaus*, 467 U.S. at 1002).  Thus, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."  *Id.*  Courts have found that a party has taken requisite reasonable measures to protect the secrecy of proprietary information when it limits access to the data and instructs those with access to maintain confidentiality.  *See e.g.*, *MAI Sys. Corp. v. Peak Comp., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (concluding plaintiff took reasonable steps to insure the secrecy to its proprietary information by requiring employees to sign confidentiality agreements respecting its trade secrets).

Masada maintains that before he shared information regarding the Laugh Factory's business operations with Iskander, he impressed upon Iskander the confidential nature of the information and stressed that the information should only be used in connection with the parties' contemplated partnership opening comedy clubs in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

Asia.  (*See* Masada Decl., ¶¶ 22, 25).  Masada insists that Iskander acknowledged the confidential nature of the information and even promised not to reveal it to anyone.  (*Id.*)

Iskander, however, disputes a number of Masada's statements.  Iskander denies that Masada ever explained that the information Masada voluntarily disclosed regarding the Laugh Factory's business operations was confidential or proprietary.  (SUF No. 21).  Iskander points to his email communications with Masada in which Masada invites Iskander and his wife to "come to Los Angeles, California to [the Laugh Factory's] flagship location . . . and see how we run the club" as evidence Masada was willing to divulge the Laugh Factory's alleged trade secrets with few precautions to maintain their secrecy.  (SUF No. 17).  Defendants argue that Masada's voluntary disclosures were based on Iskander's verbal assurances of confidentiality and were reasonable given the parties' contemplated partnership.  (Opp. at 12:11-13).  Yet, there is no dispute that Masada was aware Iskander planned to "open[] a chain of comedy clubs in Kuala Lumpur and eventually [throughout] Asia regardless of the outcome of [his] current negotiation with Laugh Factory."  (SUF No. 18).

Despite Iskander's candor about his intention to launch his own comedy clubs in the region if his partnership with the Laugh Factory did not materialize, Defendants did not require him to sign a confidentiality agreement before sharing detailed information regarding the inner-workings of the Laugh Factory clubs.  Additionally, Defendants offer no evidence to show they made efforts to protect their alleged trade secrets in the normal course of business by, for instance, requiring employees to sign non-disclosure agreements or maintaining confidential business records in a secure location.  Thus, no reasonable jury could conclude Defendants took appropriate measures to protect the secrecy of their alleged trade secrets.

Accordingly, the Court **GRANTS** Plaintiff's MSJ as to Defendants' trade secrets misappropriation counterclaims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

### C.      **Breach of Contract Claim**

The Laugh Factory Defendants' breach of contract counterclaim arises from Iskander's alleged failure to comply with the Amended Rules and make the required promotional appearances in the United States after winning the FPITW Contest.  (Opp. at 19).  Iskander argues Defendants' breach of contract claim must fail because Laugh Factory violated Cal. Bus. & Prof. Code §17539.1(a) by amending the FPITW Contest terms and conditions and structuring the $100,000 grand prize as 10 installment payments of $10,000 for each publicity trip the winner made to the United States. (MSJ at 33-34).  Cal. Bus. & Prof. Code § 17539.1(a) provides, in pertinent part:

(a) The following unfair acts or practices undertaken by, or omissions of, any person in the operation of any contest or sweepstakes are prohibited:

. . .

(6) Failing to clearly and conspicuously disclose the exact nature and approximate value of the prizes when offered.

. . .

(7) Failing to award and distribute all prizes of the value and type represented.

Cal. Bus. & Prof. Code § 17539.1(a).

As discussed above, when Laugh Factory initially published the FPITW Contest Rules on its website, it did not mention installment payments or promotional performances as a requirement to receive the $100,000 grand prize.  (SUF Nos. 32, 33).  However, Laugh Factory asserts the Amended Rules were repeatedly made known to and accepted by all of the contestants, including Iskander, in June,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:     Harith Iskander v. Laugh Factory, Inc. et al.

September, October and November 2016, in advance of the semifinals held in Finland
in December 2016.  (*See* Masada Decl., ¶¶ 38-41).

Joshi states that when he contacted Iskander regarding the FPITW Contest as
early as June 2016, he informed Iskander that the first-place winner would receive
$100,000, paid in installments of $10,000 for each promotional trip made to the United
States to perform.  (*See* Joshi Decl., ¶ 4).  Joshi avers that he told Iskander that the
promotional trips were a required aspect of the competition and that Iskander
confirmed he understood the Amended Rules.  (*Id.*).  Likewise, Masada states that he
personally explained the Amended Rules to Iskander in September 2016, when
Iskander called him to discuss the FPITW Contest and introduce the possibility of
partnering to expand the Laugh Factory brand in Asia.  (*See* Masada Decl., ¶ 38; Joshi
Decl., ¶ 5)  Masada claims that he reiterated the Amended Rules to Iskander on or
about October 29, 2016 and specified the first-place winner would receive a $100,000
prize, the second-place winner would receive a $10,000 prize, and the next 20
contestants would receive $1,000 each.  (*See* Masada Decl., ¶ 38).

Iskander, however, claims he was unaware of the Amended Rules until Masada
sent them to contestants in November 2016, after Iskander was already fully committed
to the FPITW Contest.  (SUF Nos. 39, 40, 44).  Defendants respond that Iskander was
informed of the Amended Rules well in advance of November, he never objected to
them and, in fact, he acknowledged and assumed his obligation to make multiple trips
to the United States in order to obtain the prize money.  Indeed, presumably in an
effort to be more cost-effective, after winning the FPITW Contest, Iskander suggested
making an extended trip to the United States in order to fulfill the multiple-trip
requirement under the Amended Rules.  (Masada Decl., ¶ 41, Ex. 8).  Iskander also
coordinated with Masada when he visited Los Angeles to ensure he received his
installment prize payments.  (*See* Masada Decl., ¶ 20, Ex. 10).

In sum, Defendants assert they told Iskander about the Amended Rules as early
as June 2016 before he entered the FPITW Contest while Iskander maintains he knew
nothing about the installment payments or required publicity trips until November
2016, a couple of days before the semifinals in Finland.  Based on this evidentiary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

record, the Court determines that genuine issues of triable fact remain as to when
Iskander became aware of the Amended Rules, whether he acquiesced to them prior to
entering the FPITW Contest, and whether his failure to make promotional appearances
was unjustified.  Summary judgment is therefore inappropriate.

Accordingly, the Court **DENIES** Plaintiff's MSJ as to Defendants' breach of
contract counterclaim.

### D.    Unfair Competition Claim

Defendants state that Iskander violated California's Unfair Competition Law's
("UCL") prohibition against "unlawful, unfair or fraudulent business act[s] or
practice[s]."  Cal. Bus. & Prof. Code § 17200.

A UCL claim must be based on some predicate act involving a violation of some
other law or statute.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.
4th 163, 180 (1999).  Thus, Defendants' trademark infringement, breach of contract, or
tortious interference claims could serve as the basis for an unfair competition claim.
Plaintiff argues Defendants' UCL claim should fail because it is exclusively based on
Iskander's alleged acts in Malaysia and "the presumption against extraterritoriality
applies to the UCL in full force."  *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d
1062, 1067 (E.D. Cal. 2013) (citation omitted).

Plaintiff is correct that the UCL does not apply where a litigant who is not a
resident of California brings a cause of action based on conduct which occurred outside
of California.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207-08 (2011).  However,
"the UCL reaches any unlawful business act or practice committed in California."  *Id.*
at 1208; *see also Speyer v. Avis Rent A Car System, Inc.*, 415 F. Supp. 2d 1090, 1099
(S.D. Cal. 2005) (stating that California courts have held that "the UCL applies to
wrongful conduct that occurs out-of-state but results in injury in California").  In
addition, courts have held that a UCL claim may be brought by a litigant who is a
resident of California, regardless of where the alleged misconduct occurred.  *Norwest
Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (stating that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

"California residents" suing for mortgage company's out-of-state conduct "may assert UCL claims . . . regardless of where the mortgage company's conduct occurred."); *see also Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1391-92 (1999) (allowing California resident who was allegedly harmed by out-of-state misconduct to bring a claim under the UCL).

Here, there is a genuine dispute as to whether Iskander's alleged acts giving rise to Defendants' trademark infringement, breach of contract, and tortious interference claims occurred exclusively in Malaysia.  Additionally, both Defendants are California citizens and allege that Iskander's conduct caused harm to their business interests in California.

Accordingly, the Court **DENIES** Plaintiff's MSJ as to Defendants' unfair competition counterclaim.

### E.   Intentional Interference with Prospective Economic Advantage Claim

The elements of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (citations omitted).

The conduct that disrupts the economic relationship must be independently wrongful, separate and apart from the interference itself.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003) (citing *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (1995)).  An improper motive does not suffice to render an act independently wrongful.  *Id.*  However, if the act is unlawful, it is independently wrongful.  *Id.* at 1159.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  LA CV-19-1076-MWF (JEMx)          Date:  March 17, 2020**
Title:      Harith Iskander v. Laugh Factory, Inc. et al.

Plaintiff contends that the Laugh Factory Defendants have offered no evidence demonstrating Plaintiff engaged in any intentional, independently wrongful act designed to disrupt the economic relationship between Defendants and other potential partners in Asia.  (MSJ at 39).  In the Opposition, Defendants argue that Iskander misled them to believe that he would partner with them to expand the Laugh Factory's presence in Malaysia and throughout Asia and, as a result, Defendants lost out on other prospective business ventures and relationships in the region.  (Opp. at 22).

The Court concludes that there is a dispute of material fact as to whether Iskander engaged in independently wrongful conduct with the purpose of disrupting the Laugh Factory's business relationships with potential franchisees in Asia.  The MSJ is therefore **DENIED** as to Defendants' tortious interference counterclaim.

## VI.   **CONCLUSION**

For the foregoing reasons, the Court rules upon the MSJ as follows:

- **GRANTED** as to Defendants' Third Counterclaim for trade secret misappropriation pursuant to 18 U.S.C. § 1836(b) and Fourth Counterclaim for trade secret misappropriation pursuant to California Civil Code section 3426;

- **GRANTED** as to Defendants' First Counterclaim for trademark infringement pursuant to 15 U.S.C. § 1114 and Second Counterclaim for common law trademark infringement to the extent these counterclaims are premised on Plaintiff's use of the "Joke & Lok" mark;

- **DENIED** as to Defendants' First Counterclaim for trademark infringement pursuant to 15 U.S.C. § 1114 and Second Counterclaim for common law trademark infringement to the extent these counterclaims are premised on Plaintiff's use of "The Joke Factory" mark;

- **DENIED** as to Defendants' Fifth Counterclaim for breach of contract;

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.**  **LA CV-19-1076-MWF (JEMx)**          **Date:  March 17, 2020**
Title:       Harith Iskander v. Laugh Factory, Inc. et al.

- **DENIED** as to Defendants' Sixth Counterclaim for unfair competition;

- **DENIED** as to Defendants' Seventh Counterclaim for intentional interference with prospective economic advantage.

IT IS SO ORDERED.